

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-12-2008

# USA v. Wise

Precedential or Non-Precedential: Precedential

Docket No. 06-4926

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Wise" (2008). *2008 Decisions.* Paper 1499.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1499

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No: 06-4926/4928
_____

UNITED STATES OF AMERICA

v.

JAYCEE WISE,
          Appellant in 06-4926

EDWIN MICHAEL BROWN,
          Appellant in 06-4928
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 05-cr-0449-1-2)
District Judge: Honorable Yvette Kane
_____

Argued January 3, 2008

Before:  FUENTES, JORDAN, *Circuit Judges*
and DuBOIS*, *District Judge.*

(Filed:  February 12, 2008)
_____

Dennis E. Boyle
Boyle & Wenger
1525 Cedar Cliff Drive
Camp Hill, PA   17011
        *Counsel for Appellant Jaycee Wise*

Ronald A. Krauss   [ARGUED]
Office of Federal Public Defender
100 Chestnut Street
Harrisburg, PA   17101
        *Counsel for Appellant Edwin Brown*

Theodore B. Smith, III   [ARGUED]
Eric Pfisterer
Michael A. Consiglio
Office of United States Attorney
228 Walnut Street
P.O. Box 11754
Harrisburg, PA   17108
        *Counsel for Appellee*

_____
    *Honorable Jan E. DuBois, United States District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

2

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge.*

Edwin Michael Brown and Jaycee Wise were each convicted of possession with intent to distribute crack cocaine, possession of a firearm in furtherance of a drug trafficking offense, and possession of a firearm by a convicted felon. On appeal, Brown and Wise challenge their convictions as well as the sentences of imprisonment imposed on them by the District Court. Beyond the obvious significance of these appeals to the appellants themselves, these appeals are of particular note because they represent the first cases in this Circuit to address the differential in the powder cocaine and crack cocaine Sentencing Guidelines since the Supreme Court's recent decision in *Kimbrough v. United States*, 128 S. Ct. 558 (2007) and the United States Sentencing Commission's recent amendment to the Guidelines ranges for crack cocaine offenses. For the reasons set forth below, we will affirm.

## I.     Background

In the Spring of 2005, the Harrisburg Bureau of Police began receiving citizen complaints regarding illegal drug dealing in the house located at 328 Hummel Street in Harrisburg, Pennsylvania. On May 27, 2005, after confidential informants provided further information about

3

the illicit activities at that address, and after one of the informants purchased cocaine using marked bills, officers entered the house pursuant to a search warrant. An officer found defendant Wise standing on the second floor, near the stairway. Wise ran into a nearby bedroom when he saw the officer, but was eventually taken into custody. The officers found a plastic bag containing 21 individually-wrapped packets of crack cocaine on the stairway close to where Wise had been standing. The officers also discovered a loaded semiautomatic pistol laying on a mattress in the bedroom into which Wise had fled.

The officers found defendant Brown lying on a bed in a third-floor bedroom. He was also taken into custody. The officers discovered a sawed-off shotgun between the mattress and the box spring of the bed on which Brown had been lying. In addition, they found in Brown's pocket two bills from the marked currency that had been used by the confidential informant to purchase cocaine.

Brown and Wise were charged with possession with intent to distribute 50 or more grams of crack cocaine (in violation of 21 U.S.C. § 841(a)(1)), possession of a firearm in furtherance of a drug trafficking offense (in violation of 18 U.S.C. § 924(c)), and possession of a firearm by a convicted felon (in violation of 18 U.S.C. § 922(g)(1)). The counts of the superceding indictment charging possession with intent to distribute crack cocaine and charging possession of a firearm in furtherance of that offense also charged Brown and Wise as aiders and abettors in those offenses (in violation of 18 U.S.C. § 2).

4

At trial, the government presented testimony from a number of witnesses who identified Brown and Wise as armed crack cocaine dealers. Among the witnesses was Mr. Carter Chilson, the lessee of 328 Hummel Street. Chilson testified that, in exchange for receiving drugs over a six to eight week period, he allowed Brown and Wise to live in and sell crack cocaine from his home. According to Chilson, Brown and Wise received from their supplier on nearly a daily basis a $1,000 package of crack cocaine, which contained approximately 100 individual packets of crack cocaine similar in size to the 21 individual packets the officers had recovered from the stairway at 328 Hummel Street.

At trial, Brown and Wise stipulated that the total amount of crack cocaine contained in the 21 packets recovered from the house was 3.1 grams. Thus, based on Chilson's estimate that 100 such packets were provided to Brown and Wise almost daily, the amount of crack cocaine that had been delivered to and sold by the defendants over the six to eight week period amounted to substantially more than 300 grams. Chilson also testified that, while selling drugs, the defendants possessed and displayed firearms, namely, the semiautomatic pistol and the sawed-off shotgun.

A jury found Brown and Wise guilty on all charges. The jury also found, through special interrogatories, that each defendant had possessed with the intent to distribute more than 50 grams of crack cocaine and had brandished a firearm in furtherance of a drug trafficking offense.

As a result of the jury's verdict, each of the defendants was subject to a statutory range of imprisonment of 17 years to life: 10 years to life for the drug offense, a maximum of 10 years for possessing a firearm as a convicted felon, and a consecutive term of 7 years to life for brandishing a firearm in furtherance of a drug trafficking offense. In order to determine the appropriate sentences to impose within that range, the District Court first calculated the applicable sentencing ranges under the United States Sentencing Guidelines (the "Guidelines").[1] Consistent with instructions in the Guidelines, U.S.S.G. § 3D1.2, the Court grouped together the drug offense and the § 922(g)(1) firearm offense, i.e., felon in possession of a firearm. Finding that each of the defendants was responsible for possessing with intent to distribute more than 150 grams of crack cocaine, the Court then assigned each of the defendants a base offense level of 34 for those two offenses, in accordance with the version of the Guidelines then in effect. *See* U.S.S.G. § 2D1.1(c)(3) (Nov. 1, 2006) (offenses involving more than 150 grams but less than 500 grams of crack cocaine are categorized at a base offense level of 34); § 3D1.3(a) (offense level applicable to group is offense level for most serious offense).

---

[1]While the Presentence Investigation Reports employed the 2005 version of the Guidelines, the 2006 version of the Guidelines was in effect on the date Brown and Wise were sentenced, and was used at sentencing. The 2005 and 2006 versions of the Guidelines do not differ in ways relevant to this appeal.

Brown's criminal history category of IV, combined with an offense level of 34, yielded a Guidelines range of 210 to 262 months. U.S.S.G. Ch. 5 Pt. A, Sentencing Table. Brown was also subject to a consecutive term of 84 months for brandishing a firearm in furtherance of a drug trafficking offense. *See* U.S.S.G. §2K2.4(b). Accordingly, his aggregate Guidelines range was 294 to 346 months.

As required by our case law, the District Court then exercised its discretion in determining Brown's sentence by considering the factors set forth in 18 U.S.C. § 3553(a). Brown's counsel urged the Court to take into consideration the disparity in the Guidelines ranges for offenses involving crack cocaine compared to those for powder cocaine. The Court concluded that while the circumstances of Brown's offenses would make the imposition of a sentence "at the very top" of the Guidelines range appropriate, the disparity in the treatment of crack cocaine offenses and powder cocaine offenses under Guidelines warranted a lower sentence:

> I heard the testimony in the case. It was very powerful testimony. The nature and the circumstances of the offense are probably the most serious of all the drug cases I've heard. It wasn't a hand-to-hand occasional sale on a street corner, but it was a long-term drug trafficking operation that took place in a person's private home.

> The defendant and his co-defendant took the house over and turned it into a crack house. And as people said, it was like Grand Central Station in there. Drug selling was going on 24 hours a day, and there were weapons. It's serious. It's as serious as a drug case can get.

7

I consider that and balance it against the history and characteristics of the defendant. He's relatively young, and that would militate toward a lesser sentence, but I have to note that he has a long history of violent crime beginning at age 17. Records indicate he's had drug involvement, trafficking, since 18 years of age. He's been dealing drugs since the age of majority.

I think the highest sentence is necessary to reflect the seriousness of the offense, to promote respect for the law, and to deter this defendant and to protect the public from his future conduct.

I do consider the powder/crack cocaine disparity. I think the Court should. I think the guideline range is much higher, much, much higher than it would be had the defendant been dealing powder cocaine, so I consider that in the calculations. I'm also considering the fact that the defendant is going to be serving an 84 consecutive-month sentence [for the 18 U.S.C. § 924(c) violation].

Everything about this case suggests to me that a guideline sentence at the very top of the range is warranted. I can't picture a case in this guideline range that would be – would represent worse conduct than what we saw here.

But I am looking at the defendant's age. I'm looking at the disparity between powder and

8

crack cocaine. So I'm going to sentence him in the middle of the guideline range.

(Brown App. at 790-91.) Ultimately, the Court sentenced Brown to 324 months in prison and five years of supervised release.[2]

The District Court undertook the same process with respect to Wise, who was sentenced on the same day. Wise's criminal history category of III, combined with an offense level of 34, yielded a Guidelines range of 188 to 235 months. U.S.S.G. Ch. 5 Pt. A, Sentencing Table. Wise was also subject to a consecutive term of 84 months for brandishing a firearm in furtherance of a drug trafficking offense. *See* U.S.S.G. §2K2.4(b). Accordingly, his aggregate Guidelines range was 272 to 319 months.

As it had done with Brown, the District Court considered the crack/powder cocaine disparity as part of its consideration of the § 3553(a) factors, stating "I think the Court can consider what the guidelines would have been had the calculation been for powder rather than crack cocaine and consider that as part of the background and circumstances under 3553(a). I do that here." (Wise App. at 825.) Nevertheless, the Court concluded that a within-Guidelines

---

[2]The sentence of imprisonment included 240 months for the drug offense, 120 months for the § 922(g)(1) firearm offense, to be served concurrently with the sentence for the drug offense, and 84 months for the § 924(c) firearm offense, to be served consecutively to the other two sentences.

9

sentence was appropriate and sentenced Wise to 319 months in prison and five years of supervised release.[3]

On appeal, Brown and Wise challenge both their convictions and their sentences. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II. Discussion

### A. Challenges to the Convictions

The defendants first argue that the District Court erroneously denied their motions for judgments of acquittal because the evidence presented at trial was insufficient to permit the jury to find them guilty beyond a reasonable doubt. We review a defendant's challenge to the sufficiency of the evidence in the light most favorable to the government. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006). We will sustain a verdict "if a rational trier of fact could have found the defendant guilty beyond a reasonable doubt and if the verdict is supported by substantial evidence." *Id.*

The essence of the defendants' challenge to the sufficiency of the evidence is that the witnesses who testified against them were not credible because they were all drug users. However, it is not our role to weigh the credibility of the witnesses. Indeed, we "must be ever vigilant ... not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our]

---

[3]The sentence of imprisonment included 235 months for the drug offense, 120 months for the § 922(g)(1) firearm offense, to be served concurrently with the sentence for the drug offense, and 84 months for the § 924(c) firearm offense, to be served consecutively to the other two sentences.

10

judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). Given that constraint, a review of the record reveals that the evidence is more than sufficient to sustain the verdicts. For example, Chilson's testimony, which the jury was entitled to credit, indicated that Brown and Wise had sold more than 300 grams of crack cocaine during a period of six to eight weeks and, while doing so, had possessed and brandished firearms. Accordingly, we find no error in the District Court's denial of the defendants' motions for judgments of acquittal.

Wise also challenges his conviction on three additional grounds, none of which requires extensive discussion. Wise first argues that the District Court erred in failing to instruct the jury that it must unanimously agree on the specific type of firearm he possessed in violation of 18 U.S.C. § 924(c)(1)(A). Because he did not make this argument to the District Court, we review the jury instructions for plain error, *United States v. Williams*, 464 F.3d 443, 445 (3d Cir. 2006), and we find none.

Contrary to Wise's assertion, the jury was not required to unanimously agree on the type of weapon that he possessed, because a specific type of firearm is not an element of a violation under 18 U.S.C. § 924(c)(1)(A). *United States v. Hernandez-Albino*, 177 F.3d 33, 40 (1st Cir. 1999); *United States v. Morin*, 33 F.3d 1351, 1353-54 (11th Cir. 1994); *United States v. Correa-Ventura*, 6 F.3d 1070, 1082-87 (5th Cir. 1993); *cf. Richardson v. United States*, 526 U.S. 813, 818 (1999) ("Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement–a disagreement about means–would not matter as long as all 12 jurors unanimously concluded that the Government had

11

proved the necessary related element, namely, that the defendant had threatened force."). This court has previously remarked in dicta that a district court had properly instructed the jury that it must unanimously agree on which weapon a defendant had used during a drug trafficking crime in order to convict him under 18 U.S.C. § 924(c)(1) (1986). *United States v. Theodoropoulos*, 866 F.2d 587, 597 (3d Cir. 1989), *overruled on other grounds by United States v. Price*, 76 F.3d 526, 528 (3d Cir. 1996). But we did not state that such an instruction is required in every case, nor do we believe, in light of the Supreme Court's subsequent opinion in *Richardson*, that such an instruction was required in this case. The two defendants, charged both as principals and aiders and abettors, were found with two firearms. Eyewitness testimony described each of them brandishing the firearms during their drug dealing. Further specificity about the weapons is not necessary to sustain a conviction under the statute.

Next, Wise argues that the District Court abused its discretion in refusing to suppress a witness's in-court identification of him on the basis that it was tainted by an unnecessarily suggestive pretrial identification procedure. We disagree. Even if a pretrial identification procedure is suggestive, a subsequent in-court identification is admissible "unless the pretrial identification procedure was so unnecessarily suggestive as to give rise to such a substantial likelihood of irreparable misidentification that admitting the identification testimony would be a denial of due process." *United States v. Clausen*, 328 F.3d 708, 713 (3d Cir. 2003). The "central question" in such a case is "whether under the 'totality of the circumstances' the identification was reliable," even though the pretrial procedure was suggestive. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972) (outlining the factors courts should consider in assessing reliability).

12

In this case, the District Court did not err in concluding that there was no substantial likelihood of irreparable misidentification. Before the witness took the stand, the prosecutor imprudently showed her a mug shot of Wise with the words "Harrisburg Police Department" written across the top. Even if we accept, however, that the procedure was unnecessarily suggestive, the record still supports the District Court's conclusion that the witness's in-court identification of Wise was reliable. The evidence shows that, prior to Wise's arrest, the witness had lived with him for over a month in the house at 328 Hummel Street. Accordingly, the District Court did not abuse its discretion in admitting the in-court identification.

Finally, in a related argument, Wise alleges that the manner in which his counsel objected to the District Court's admission of the in-court identification amounted to ineffective assistance. Except in limited circumstances, however, "[i]t has long been the practice of this court to defer the issue of ineffectiveness of trial counsel to a collateral attack," *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003), and we will continue that practice here.

### B. Challenges to the Sentences

Brown and Wise next challenge, on a number of grounds, the sentences imposed upon them. We reject their arguments and affirm the District Court's judgments of sentence.

### 1. Post-*Booker* Sentencing

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines are advisory only. Recently, in *Gall v. United States*, 128 S. Ct.

13

586 (2007), the Court reiterated the process a district court must undertake after *Booker* to determine the appropriate sentence for a defendant:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Id*. at 596-97 (internal citations omitted).

14

The Supreme Court's opinion in *Gall* reemphasizes the post-*Booker* sentencing structure set forth in this Court's precedent. *See, e.g.*, *United States v. Ali*, 508 F.3d 136, 142, 153-54 (3d Cir. 2007) (district court must first calculate the applicable Guidelines range "precisely as [it] would have before *Booker*," then "give meaningful consideration to the relevant § 3553(a) factors and state adequate reasons for a sentence on the record so that this court can engage in meaningful appellate review" (internal quotation marks and citations omitted)); *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (same); *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (same). In essence, the district court must perform three steps in determining the appropriate sentence to impose on a defendant. As *Gall* makes clear, a district court must begin the process by correctly calculating the applicable Guidelines range. 128 S. Ct. at 596; *see also Gunter*, 462 F.3d at 247. As part of calculating the applicable range, this Court's precedent instructs district courts to conduct a second step, which is to "formally rule on the motions of both parties and state on the record whether [it is] granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force." *Gunter*, 462 F.3d at 247 (internal quotation marks and citation omitted). Finally, after giving both sides the chance to argue for the sentences they deem appropriate, the court must exercise its discretion by considering all of the § 3553(a) factors[4] and determining the appropriate sentence to

---

[4] Those factors are:

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed--

        (A) to reflect the seriousness of the

offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

(i) issued by the Sentencing Commission ..., subject to any amendments made to such guidelines by act of Congress ...; and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; ...

...

(5) any pertinent policy statement--

(A) issued by the Sentencing

16

impose.  *Gall*, 128 S. Ct. at 596; *Gunter*, 462 F.3d at 247.

As an appellate court, our role is two-fold.  We must first ensure that the district court committed no significant procedural error in arriving at its decision, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range." *Gall*, 128 S. Ct. at 597.  We review the district court's decision under an abuse-of-discretion standard, *id.*, but the amount of deference we give will depend on the type of procedural error asserted on appeal.  For example, a district court will be held to have abused its discretion if its decision was based on a clearly erroneous factual conclusion or an erroneous legal conclusion.  *United States v. McComb*, No. 07-5003, 2007 WL 4393142, at *3 (10th Cir. Dec. 18, 2007); *see also Koon v. United States*, 518 U.S. 81, 100

--------

Commission ..., subject to any amendments made to such policy statement by act of Congress ...; (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.
Section 3553(a) directs courts to "impose a sentence sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in the second factor.

17

(1996) ("A district court by definition abuses its discretion when it makes an error of law."); *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 401(1990) ("When an appellate court reviews a district court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable: A court of appeals would be justified in concluding that a district court had abused its discretion in making a factual finding only if the finding were clearly erroneous."). Thus, if the asserted procedural error is purely factual, our review is highly deferential and we will conclude there has been an abuse of discretion only if the district court's findings are clearly erroneous. *Gall*, 128 S. Ct. at 597; *see also United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (*en banc*) ("A sentence imposed as a result of a clearly erroneous factual conclusion will generally be deemed 'unreasonable' ... ."). On the other hand, we do not defer to a district court when the asserted procedural error is purely legal, as, for example, when a party claims that the district court misinterpreted the Guidelines.[5] *Grier*, 475 F.3d at 570.

If we determine that the district court has committed no significant procedural error, we then review the

---

[5]Of course, not all issues that may be raised on appeal can be neatly separated into the categories of "fact" and "law." But whether or not a particular issue fairly fits into one of those categories, we must review the district court's decision under "the familiar abuse-of-discretion standard." *Gall*, 128 S. Ct. at 594; *cf. Koon*, 518 U.S. at 100 ("That a departure decision, in an occasional case, may call for a legal determination does not mean, as a consequence, that parts of the review must be labeled *de novo* while other parts are labeled an abuse of discretion."); *Cooter*, 496 U.S. at 403 (court of appeals should apply "a unitary abuse-of-discretion standard").

18

substantive reasonableness of the sentence under an abuse-of-discretion standard, regardless of whether it falls within the Guidelines range. *Gall*, 128 S. Ct. at 597. We may consider the extent of a court's deviation from the Guidelines range, but we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*; *see also United States v. Greenidge*, 495 F.3d 85, 102 (3d Cir. 2007) ("In this final step, our review is, to a great degree, deferential, because we recognize that the trial court is in the best position to determine the appropriate sentence." (internal quotation marks and citation omitted)). We may not reverse the district court simply because we would have imposed a different sentence. *Gall*, 128 S. Ct. at 597. Instead, we continue to recognize that "'reasonableness is a range, not a point.'" *Cooper*, 437 F.3d at 332 n. 11 (quoting *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005)). As long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm. *See McComb*, 2007 WL 4393142, at *3 ("[W]e recognize that in many cases there will be a range of possible outcomes the facts and law at issue can fairly support; rather than pick and choose among them ourselves, we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices.").

## 2. Procedural Challenges

Turning to this case, we begin by considering whether the District Court committed any procedural error. The defendants assert that the District Court committed three different types of procedural error: (1) it relied on a clearly erroneous fact in calculating the applicable Guidelines ranges; (2) it incorrectly calculated the applicable Guidelines ranges;

19

and (3) it applied the Guidelines as mandatory. We deal with each of those procedural challenges below.

### a.      Erroneous Factual Finding

Brown and Wise first challenge the District Court's finding that, between them,[6] they sold more than 150 grams of crack cocaine. As noted above, the District Court will have abused its discretion in imposing a sentence if it based its Guidelines calculation on clearly erroneous facts. "A finding is clearly erroneous when although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993) (internal quotation marks and citation omitted).

The record here leaves us with no such conviction. The District Court's finding regarding the relevant drug quantity was based upon the evidence presented at trial, and the same evidence that supports the jury's finding that the defendants sold more than 50 grams of crack cocaine also supports the Court's finding that they sold more than 150 grams. As earlier noted, officers recovered from the crime scene 21 individually-wrapped packets of crack cocaine, totaling 3.1 grams. Those packets, according to Chilson's

---

[6]It was not necessary for the District Court to determine the amount of crack cocaine sold by Brown and Wise individually because they aided and abetted one another in their drug sales. *See* U.S.S.G. § 1B1.3(a)(1)(A) ("Unless otherwise specified ... the base offense level ... shall be determined on the basis of ... all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... .").

20

testimony, were similar to the ones sold by Brown and Wise during the six to eight week period they were operating their crack business at 328 Hummel Street. Chilson also testified that, during that period, Brown and Wise received from their supplier 100 individual packets of crack cocaine on nearly a daily basis. Thus, using the most conservative calculations based on Chilson's testimony, the amount of crack cocaine that had been delivered to and sold by the defendants over the relevant time period was greater than 300 grams. The District Court specifically credited Chilson's testimony, finding him to be "a completely credible witness." (Brown App. at 775; *see also* Wise App. at 824-25 ("I believed everything that [Chilson] said, and I believe the drug amounts that he put before the Court.").) After reviewing the evidence, we have no concern, let alone a definite and firm conviction, that a mistake has been made, and we therefore affirm the District Court's drug quantity finding.[7]

---

[7]Brown nevertheless argues that the District Court erred in crediting Chilson's testimony because, as a drug abuser, his testimony lacked the indicia of reliability required by this Court in *United States v. Miele*, 989 F.2d 659 (3d Cir. 1993). But *Miele* does not, as Brown suggests, stand for the proposition that a district court may never credit the testimony of a drug abuser. Moreover, unlike in *Miele*, the Court here based its finding on its first-hand observation of Chilson at trial, which led the District Court to say Chilson was "completely credible." (Brown App. at 774-75.) Brown also argues that District Court erred in applying the preponderance-of-the-evidence standard in making its drug quantity finding. The same argument, however, has already been rejected by this Court. *Grier*, 475 F.3d at 568.

Wise also asserts that, with respect to the District Court's factual finding regarding the amount of drugs, he was "denied his right to a hearing" under Federal Rule of Criminal

### b. Erroneous Guidelines Calculations

Brown and Wise also argue that the District Court committed procedural error by incorrectly calculating the applicable Guidelines ranges. Effective November 1, 2007, the United States Sentencing Commission adopted Amendment 706, which modified the Guidelines ranges applicable to crack cocaine offenses. In general, the effect of Amendment 706 is to decrease by two levels the base offense levels for crack cocaine offenses.[8] *See* U.S.S.G. § 2D1.1 (Nov. 1, 2007); U.S.S.G. Supp. to App'x C, Amend. 706. Brown and Wise argue that because the District Court employed the Guidelines that were in effect on the day they were sentenced, and because the Guidelines were amended during the pendency of their appeals, the District Court's Guidelines calculation amounts to procedural error. Their argument is unpersuasive.

Since *Booker*, the Guidelines are one factor among several listed in 18 U.S.C. § 3553(a) that courts must consider in determining the appropriate sentence to impose on a defendant. *Gall*, 128 S. Ct. at 596-97. Specifically,

_____

Procedure 32(i)(2) and (3)(B). (Wise Br. at 34.) The flaw in that argument is that he had no right to a hearing. The provisions of Rule 32 that he cites do not grant any such right but say instead that "[t]he court may permit the parties to introduce evidence on the objections" they may have to the presentence report and that the court must rule on objections or, for the reasons described in the rule, determine that no ruling is necessary.

[8]Amendment 706 was itself amended by Amendment 711 in ways not relevant to this appeal.

22

§ 3553(a)(4)(A)(ii) instructs that a court should consider the Guidelines that "are in effect on the date the defendant is sentenced."[9] That statutory command has been incorporated into the Guidelines themselves, which state that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a).

The Guidelines are no longer mandatory, but that does not render optional § 3553(a)(4)'s direction to consider the Guidelines that are in effect on the date of sentencing. Accordingly, we will continue to expect that district courts will calculate the applicable sentencing ranges using the Guidelines extant at the time of sentencing, and we will continue to review the propriety of a sentence based on those same Guidelines. *United States v. Diaz*, 245 F.3d 294, 300-01, 305 (3d Cir. 2001) (citing U.S.S.G. § 1B1.11(a)). On review, there are two exceptions to that rule: first, if applying the version of the Guidelines in effect on the date of sentencing presents an *ex post facto* problem, *United States v. Menon*, 24 F.3d 550, 556 (3d Cir. 1994), and second, if a subsequent guideline amendment "merely clarifies the law in existence at the time of sentencing," as opposed to working a substantive change in the law. *Diaz*, 245 F.3d at 301. Neither exception is applicable in this case. There is clearly no *ex post facto* problem, and we have previously ruled that a post-sentencing amendment reducing the base offense level applicable to a particular offense is a substantive change and

---

[9]Section 3553(a)(4)(A)(ii) provides an exception when a case is remanded for resentencing; in that case, the district court "shall apply the guidelines ... that were in effect on the date of the previous sentencing of the defendant prior to the appeal." 18 U.S.C. § 3742(g).

23

is therefore not applied retroactively to cases on appeal.[10] *United States v. Marcello*, 13 F.3d 752, 756 (3d Cir. 1994) (affirming a defendant's sentence even though a Guidelines amendment that had taken effect during the pendency of the defendant's appeal had lowered the applicable Guidelines range).

In this case, Brown and Wise were sentenced on November 20, 2006. The District Court properly calculated their Guidelines ranges using the version of the Guidelines that was in effect on that date. We therefore find no procedural error in the District Court's Guidelines calculation.

---

[10]*Marcello* referred to an amended Guidelines range as being "retroactive" under certain circumstances. That use of "retroactive" was apt in the sense that the legal analysis required in the case called for a discussion of the application of an amended Guideline to a pre-amendment case. Indeed, U.S.S.G. § 1B1.10 used to be entitled "Retroactivity of Amended Guidelines Range (Policy Statement)." However, in an important sense an amended range is not retroactive because a defendant has no right to have the new range applied to his case, either by a reviewing court on appeal or by a district court on remand. Instead, what 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10 provide for is a mechanism to allow district courts to consider whether the benefit of a substantive amendment listed in § 1B1.10(c) should be given to a qualifying defendant. *See infra*, at 25-26. It is perhaps not coincidental that § 1B1.10 no longer has the word "retroactivity" in its title but bears the new title "Reduction in Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement)."

24

Nevertheless, Brown and Wise may be able to obtain some benefit from Amendment 706 in the future, through a procedure available in the District Court. Generally, a district court may not alter a term of imprisonment once it has been imposed. *See* 18 U.S.C. § 3582(c). However, § 3582(c)(2) provides an exception:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, if the applicable Guidelines range has been lowered after a defendant has been sentenced, a district court may–*sua sponte*, or upon motion of the defendant, or upon motion of the Director of the Bureau of Prisons–reduce the defendant's sentence, but only if the reduction would be consistent with a policy statement issued by the Sentencing Commission. *Id*.

Defendants sentenced for crack cocaine offenses prior to November 1, 2007 will, however, have to wait to seek the relief provided in § 3582(c)(2). They cannot obtain that relief immediately because § 1B1.10 of the Guidelines, entitled "Reduction in Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement)," provides that a

25

reduction under § 3582(c)(2) is not authorized unless an amendment reducing the applicable guidelines range is among those listed in § 1B.10(c), *see* U.S.S.G. § 1B1.10(c) (Nov. 1, 2007), and Amendment 706 is not yet listed in § 1B.10(c). Therefore, Brown and Wise cannot currently file an application under § 3582(c)(2).[11]  But an amendment to § 1B1.10 is set to take effect on March 3, 2008.  *See* 73 Fed. Reg. 217-01 (Jan. 2, 2008).  If and when that amendment takes effect, district courts will, under the circumstances specified in § 3582(c)(2), be authorized to reduce the sentences of defendants whose Guidelines ranges would be lowered by Amendment 706.  *Id.*  Our decision today is without prejudice to Brown's and Wise's statutory right to pursue reduced sentences in the District Court under § 3582(c)(2), if the amendment to Guideline § 1B1.10 becomes effective on March 3, 2008.

---

[11]Some may argue that, because the Guidelines are no longer mandatory, defendants need not wait to apply for relief under § 3582(c)(2).  That fundamentally misunderstands the limits of *Booker*.  Nothing in that decision purported to obviate the congressional directive on whether a sentence could be reduced based on subsequent changes in the Guidelines.  As we have stated before, "[t]he language of the applicable sections could not be clearer: the statute directs the Court to the policy statement, and the policy statement provides that an amendment not listed in subsection (c) may not be applied retroactively pursuant to 18 U.S.C. § 3582(c)(2)." *United States v. Thompson*, 70 F.3d 279, 281 (3d Cir. 1995).

26

### c. Erroneously Treated Guidelines as Mandatory

Brown's third, and final, contention of procedural error is that the District Court erroneously treated the applicable Guidelines range for his crack cocaine offense as mandatory. *See Gall*, 128 S. Ct. at 597 (holding it is procedural error to treat the Guidelines as mandatory). His argument implicates the Supreme Court's recent decision in *Kimbrough v. United States*, 128 S. Ct. 558 (2007).

In *Kimbrough*, the Supreme Court held that district courts are free to consider, as part of their analysis of the § 3553(a) factors, the disparity in the Guidelines ranges for offenses involving crack cocaine compared to those for powder cocaine. *Id.* at 575. The Court made clear that the Guidelines ranges for crack cocaine offenses, like all of the other Guidelines ranges, are advisory only. *Id.* at 564. Accordingly, it held that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes ... ." *Id.* at 575.

The Supreme Court's decision in *Kimbrough* was foreshadowed by this Court's decision in *Gunter*, in which we recognized that "there is nothing special about the crack cocaine Sentencing Guidelines that makes them different, or less advisory, than any other Guideline provision." 462 F.3d at 248. Although we made clear that district courts were "under no obligation to impose a sentence below the applicable Guidelines range solely on the basis of the crack/powder cocaine differential," we held that a district court "errs when it believes that it has no discretion to consider the crack/powder cocaine differential ... as simply

27

advisory at step three of the post-*Booker* sentencing process (imposing the actual sentence after considering the relevant § 3553(a) factors)." *Id.* at 249. Consequently, in that case, we vacated a defendant's sentence and remanded for resentencing when the district court's remarks indicated that it believed it was bound to follow the Guidelines for crack offenses. *Id.*

Brown argues that the District Court committed a similar error here. According to Brown*,* his sentence must be vacated because *Kimbrough* was decided after the District Court sentenced him and "the record does not make clear whether the District Court understood the full scope of its discretion to consider the crack/powder disparity in imposing sentence." (Letter from Brown's counsel to Court (Dec. 20, 2007).) The record belies that contention. In this case, unlike in *Gunter*, there is simply no indication that the District Court believed it lacked authority to consider the crack/powder cocaine disparity as part of its § 3553(a) analysis. On the contrary, there is every indication that the District Court did understand that it had that authority. In responding to Brown's argument that the Court should take that disparity into account in determining the sentence to impose, the District Court stated, "I do consider the powder/crack cocaine disparity. I think the Court should. I think the guideline range is much higher, much, much higher than it would be had the defendant been dealing powder cocaine, so I consider that in the calculations." (Brown App. at 791.)

The District Court's statements at the sentencing hearing were consistent with our holding in *Gunter* and the Supreme Court's holding in *Kimbrough*. Read as a whole, the Court's remarks at sentencing show that it understood that it could sentence Brown outside the Guidelines range but chose

28

not to.  We therefore reject Brown's assertion that the District Court erroneously treated the Guidelines as mandatory.[12]

Brown nevertheless cites the Ninth Circuit's recent grant of a petition for rehearing in *United States v. Casteneda*, No. 05-10372, 2008 WL 126641 (9th Cir. Jan. 15, 2008), as support for his argument that his sentence must be vacated and remanded for the District Court to reconsider his sentence in light of *Kimbrough*.  *Casteneda*, however, is clearly distinguishable.  There, the district court, in responding to a defendant's request that the court consider the crack/powder cocaine disparity, stated, "I don't believe it's appropriate for the Court to specifically reduce a sentence under 18 U.S.C. § 3553(a) on the basis that the Congress and the U.S. Sentencing Commission are wrong in establishing different penalties for different types of controlled substances."  *Id.* at *2.  On a petition for rehearing, the Ninth Circuit vacated the defendant's sentence and remanded for resentencing because the district court's statements reflected that the district court

> did not foresee the extension of its *Booker* discretion that would be announced two years later by the Supreme Court in *Kimbrough*. Thus, the district court did not feel free to

---

[12]In a letter to the Court, Wise's counsel agrees with the government that Wise's sentence comports with *Kimbrough*. *See* Letter from Wise's counsel (Dec. 21, 2007).  Although Wise's earlier-filed brief asserted that the District Court had erroneously applied the Guidelines in a mandatory fashion, Wise's most recent submission indicates that he has retreated from that argument.  *Id.* ("At the sentencing hearing itself, the District Court noted it could consider the [crack/powder cocaine] disparity as a § 3553(a) factor but declined to do so.").

consider whether "any unwarranted disparity created by the crack/powder ratio" produced a sentence "'greater than necessary' to achieve § 3553(a)'s purposes." [*Kimbrough*, 128 S. Ct.] at 574-75.

*Id.*

In contrast to the district court's comments in *Casteneda*, the District Court's remarks in this case indicate that it understood that it could consider the crack/powder cocaine disparity as part of its consideration of the § 3553(a) factors. Moreover, as noted above, the District Court in this case had the benefit of this Court's decision in *Gunter*, which, consistent with the Supreme Court's decision in *Kimbrough*, held that a district court may impose a sentence below the applicable Guidelines range because the Guidelines for crack offenses are no more mandatory than the Guidelines for any other offense.

### 3. Substantive Reasonableness

Because the District Court's sentencing decisions were procedurally sound, we next consider, under an abuse-of-discretion standard, the substantive reasonableness of the sentences imposed. *Gall*, 128 S. Ct. at 597. Brown argues that the District Court abused its discretion in sentencing him because it "failed to grant a sufficient variance from the Guidelines based on the crack/powder differential." (Brown Br. at 40.)

We do not agree. The District Court's decision was a result of its reasonable conclusion that, upon consideration of the § 3553(a) factors and even taking the crack/powder cocaine disparity into account, a sentence of 324 months is

30

justified.  Although the Court considered that the Guideline range was "much, much higher than it would be had [Brown] been dealing powder cocaine," which might potentially justify a lower sentence, it also considered that the "nature and circumstances of the offense," § 3553(a)(1), were "probably the most serious of all the drug cases [it had] heard."  (Brown App. at 790-91.)  In addition, in the context of considering Brown's "history and characteristics," § 3553(a)(1), the Court noted that Brown had a history of drug trafficking.  (Brown App. at 790.)  While the Court believed a high sentence was "necessary to reflect the seriousness of the offense, to promote respect for the law, and to deter [Brown] and to protect the public from his future conduct," *see* § 3553(a)(2), in the end, it concluded that a sentence in the middle of the Guidelines range was appropriate in light of all of the § 3553(a) factors.  (Brown App. at 790-91.) "Giving due respect to the District Court's reasoned appraisal," *Kimbrough*, 128 S. Ct. at 576, as we must, we cannot say that the sentence Brown received amounted to an abuse of discretion.

Wise does not challenge the substantive reasonableness of his sentence on appeal.  Because we can discern no procedural or substantive error related to Wise's sentence, we will affirm his sentence as well.

## III.  Conclusion

Accordingly, for the reasons set forth above, we will affirm the District Court's judgments of conviction and sentence.