

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-19-2009

# USA v. Bruce Edward Fitzger

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2608

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Bruce Edward Fitzger" (2009). *2009 Decisions.* Paper 1353.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1353

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2608
_____

UNITED STATES OF AMERICA

v.

BRUCE EDWARD FITZGERALD,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-07-cr-00017-001)
District Judge:  Honorable Maurice B. Cohill, Jr.

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 24, 2009

Before:  SCIRICA, *Chief Judge*, SLOVITER and FISHER, *Circuit Judges*.

(Filed:  May 19, 2009 )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Bruce Edward Fitzgerald appeals from the District Court's judgment of sentence.

We will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

A.

While on patrol in a marked patrol car in the early morning hours of November 2, 2006, Pennsylvania state troopers Nathaniel Lieberum and William Dowlin noticed a gold-colored Cadillac sedan with darkly tinted windows pulling out of a gas station in Uniontown, Pennsylvania. The troopers ran the Cadillac's license plate number through the National Crime Information Center database and, discovering a problem with the vehicle registration, immediately activated their patrol car's emergency lights and siren to signal the driver to stop. As the Cadillac pulled over to the side of the road, Fitzgerald, who was riding in the car as a passenger, exited the car and fled on foot. He was quickly followed by Trooper Lieberum, who jumped out of the patrol car and gave chase, repeatedly identifying himself as a police officer and ordering Fitzgerald to stop running. Lieberum soon caught up with Fitzgerald and, after a struggle, took him into custody, discovering in the process that Fitzgerald was carrying a loaded nine-millimeter semi-automatic pistol.

Soon after Fitzgerald was taken into custody, he complained that he was ill and was taken to Uniontown Hospital, where he received medical treatment. Trooper John

Weaver was then sent to retrieve Fitzgerald from the hospital and return him to the police barracks. Weaver had little problem walking Fitzgerald out of the hospital but, as he attempted to seat Fitzgerald in the back seat of the patrol car, Fitzgerald shoved him, knocking him off balance. Freed from Weaver's grasp, Fitzgerald ran up a small hill towards an adjacent parking lot, and Weaver raced after him. But Weaver did not make it far, dropping to the ground in pain after only a few moments because, as was subsequently revealed, he had suffered a serious knee injury. Another trooper at the scene apprehended Fitzgerald. As he was being taken back into custody, Fitzgerald stated: "You know who I am, you guys have me, I give up."

B.

Fitzgerald entered an open plea of guilty to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). After the District Court accepted his guilty plea, the United States Probation Office prepared a presentence report (PSR) using the November 2007 edition of the United States Sentencing Guidelines. The Probation Office calculated Fitzgerald's base offense level as 20 under Guidelines § 2K2.1(a)(4) because he had previously been convicted of a felony controlled-substance offense, and recommended two sentencing enhancements: a four-level enhancement under § 2K2.1(b)(6) for possessing a firearm in connection with another felony offense and a two-level enhancement under § 3C1.2 for recklessly creating a substantial risk of death or other serious bodily injury to another person in the course of fleeing from a law

3

enforcement officer.  The Probation Office also recommended two sentencing reductions: a two-level reduction under § 3E1.1(a) for acceptance of responsibility and a one-level reduction under § 3E1.1(b) for timely notifying the government of the intention to plead guilty.  The resulting total offense level of 23, combined with Fitzgerald's criminal history category of IV, yielded an advisory Guidelines range of seventy to eighty-seven months of imprisonment.

At sentencing, the District Court generally agreed with the Probation Office's recommendations, applying both sentencing enhancements over Fitzgerald's objections and arriving at the same Guidelines range.  In doing so, the District Court determined that the four-level enhancement under § 2K2.1(b)(6) was appropriate because there was "no question" that Fitzgerald had recklessly endangered Trooper Lieberum's life by struggling with him while holding the gun, "whether [the gun] was pointed at [Lieberum]" or not, and that the two-level enhancement under § 3C1.2 was appropriate because Fitzgerald recklessly created a substantial risk of serious bodily injury to Trooper Weaver by "attempting to escape . . . , whether [Weaver] had a prior injury to his knee or not."

After denying Fitzgerald's request for a downward variance, the District Court sentenced him to seventy months of imprisonment and three years of supervised release. Fitzgerald now appeals from the District Court's judgment of sentence, arguing that the District Court erred in applying the enhancements and by failing to adequately explain its

rejection of his argument that the circumstances of his "difficult youth" merited a lower sentence.

## II.

The District Court had subject matter jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review a district court's sentencing decisions for reasonableness under "a deferential abuse-of-discretion standard." *Gall v. United States*, 128 S. Ct. 586, 591 (2007); *see United States v. Wise*, 515 F.3d 207, 217 n.5 (3d Cir. 2008). In this regard, "our role is two-fold." *Wise*, 515 F.3d at 217. "We must first ensure that the district court committed no significant procedural error in arriving at its decision" and, if it has not, "we then review the substantive reasonableness of the sentence." *Id.* at 217-18 (citing *Gall*, 128 S. Ct. at 597); *see United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008) ("Our responsibility on appellate review of a criminal sentence is limited yet important: we are to ensure that a substantively reasonable sentence has been imposed in a procedurally fair way."). A district court abuses its discretion when it bases its decision on a clearly erroneous finding of fact or an erroneous legal conclusion. *Wise*, 515 F.3d at 217. "At both stages of our review, the party challenging the sentence has the burden of demonstrating unreasonableness." *United States v. Tomko*, --- F.3d ----, 2009 WL 1025876, at *7 (3d Cir. Apr. 17, 2009) (en banc) (citing *United States v. Cooper*, 437 F.3d 324, 332 (3d Cir. 2006)).

III.

A.

Fitzgerald first argues that the District Court abused its discretion in applying

§ 3C1.2's two-level enhancement because it did so based on a clearly erroneous factual

finding, namely, that he recklessly created a substantial risk of serious bodily injury to

Trooper Weaver by "attempting to escape." Fitzgerald contends that his attempted escape

"may have presented no more 'substantial risk' of injury or harm to Trooper Weaver than

would a brisk walk, a jog, or a game of touch football" because, he speculates, Weaver's

injury "could have been a mere freak occurrence or a fluke" or could have resulted from

his "pre-existing health conditions, or something else."

This argument is without merit. The District Court based its factual finding on the

evidence presented at the sentencing hearing, including Weaver's testimony that

Fitzgerald "shoved" him and "took off on foot" in an attempt to escape from police

custody, and that he was seriously injured while giving chase. "A [factual] finding is

'clearly erroneous' when, although there is evidence to support it, the reviewing body on

the entire evidence is left with the definite and firm conviction that a mistake has been

committed." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) (internal

quotation marks omitted). Our review of the record in this case leaves us with no such

conviction, and we conclude that the District Court did not abuse its discretion in

increasing Fitzgerald's total offense level under § 3C1.2. *Cf. United States v. Luster*, 305

F.3d 199, 202 (3d Cir. 2002) (recognizing that "every escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so").

B.

Fitzgerald next argues that the District Court abused its discretion by applying the four-level enhancement under § 2K2.1(b)(6) for possession of a firearm in connection with another felony offense. He insists that the District Court predicated its application of § 2K2.1(b)(6) on a finding that he "pointed the gun at Trooper Lieberum's head" and, proceeding from that premise, argues that the finding was clearly erroneous because "the government completely failed to prove" that he did so.

This argument need not detain us for long, because it fails at its premise. Contrary to Fitzgerald's assertion, the District Court found that he recklessly endangered Trooper Lieberum's life "whether [the gun] was pointed at [Lieberum]" or not. And this was not error. Under Pennsylvania law, a person commits the crime of recklessly endangering another person "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa. Cons. Stat. Ann. § 2705. To establish that Fitzgerald committed this uncharged felony,[1] the government was not

---

[1]Although Pennsylvania considers a violation of 18 Pa. Cons. Stat. Ann. § 2705 to be a second-degree misdemeanor, the offense is punishable by up to two years in prison, 18 Pa. Cons. Stat. Ann. § 1104(2), and therefore qualifies as "another felony offense" within the meaning of Guidelines § 2K2.1(b)(6). *See* Guidelines § 2K2.1 cmt. n.14(C) (defining "another felony offense" for purposes of § 2K2.1(b)(6) as "any federal, state, or

required to prove that he pointed the gun at Lieberum – it was enough to demonstrate by a preponderance of the evidence that he recklessly endangered Lieberum's life by brandishing the gun during their struggle. *Cf. Commonwealth v. Hopkins*, 747 A.2d 910, 916 (Pa. Super. Ct. 2000) (concluding that "[b]randishing a loaded firearm during the commission of a crime provides a sufficient basis on which a factfinder may conclude that a defendant" violated § 2705). We are satisfied that the evidence in the record is sufficient to support application of the four-level enhancement under § 2K2.1(b)(6) and conclude that the District Court did not abuse its discretion in doing so.

## C.

Finally, Fitzgerald contends that the District Court committed a significant procedural error by failing to adequately explain its rejection of his argument for a downward variance[2] based on his "history and characteristics," specifically the circumstances of his "difficult youth," under 18 U.S.C. § 3553(a)(1). We disagree.

As Fitzgerald correctly points out, a sentencing court "must acknowledge and respond to any properly presented sentencing argument which has colorable legal merit

---

local offense punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained").

[2] A "variance" is a decision to impose a sentence that diverges from the advisory Guidelines range, either upward or downward, based on consideration of the factors set forth in 18 U.S.C. § 3553(a), as distinct from a "departure," which is a decision to alter the Guidelines range itself "based on reasons provided by the Guidelines themselves." *United States v. Lofink*, --- F.3d ----, 2009 WL 1140258, at *5 n.14 (3d Cir. Apr. 29, 2009).

8

and a factual basis." *United States v. Ausburn*, 502 F.3d 313, 329 (3d Cir. 2007). And

we have held that "[t]here are indeed situations in which a district court's failure to

adequately explain its rejection of a legally recognized sentencing factor would amount to

a 'significant procedural error' under *Gall*." *United States v. Howe*, 543 F.3d 128, 136

(3d Cir. 2008). But such a situation is not presented here. The record reflects that the

District Court credited Fitzgerald's argument for a downward variance, specifically

discussing his "very troubled childhood" and acknowledging the "eloquent letters written

by his sister and others on his behalf" and "the testimony of his cousin and sister," but

concluded that those mitigating circumstances did not outweigh the other § 3553(a)

factors. We are satisfied that the explanation set forth by the District Court shows that it

"considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own

legal decisionmaking authority." *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007).[3]

## IV.

For the foregoing reasons, we will affirm the District Court's judgment of

sentence.

---

[3]Fitzgerald does not challenge the substantive reasonableness of his sentence, and we discern no substantive error related to his sentence.