**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-2005

_____

UNITED STATES OF AMERICA,

Appellant

v.

TAIKWAN PRITCHETT

_____

Appeal from the United States District Court
for the District of Delaware
(D. C. No. 1-21-cr-00059-001)
District Judge: Honorable Maryellen Noreika

_____

Argued on March 11, 2024

Before: BIBAS, MONTGOMERY-REEVES and ROTH, Circuit Judges

(Opinion filed: May 13, 2024)

Benjamin L. Wallace       **(Argued)**
Jesse S. Wenger
Office of United States Attorney
1313 N Market Street
Hercules Building, Suite 400
Wilmington, DE 19801

Counsel for Appellant

David Pugh                    **(Argued)**
Mary K. Healy
Office of Federal Public Defender
800 King Street
Suite 200
Wilmington, DE 19801

Counsel for Appellee

_____

OPINION[*]

_____

ROTH, <u>Circuit Judge</u>

Nearly three years ago, police officers searched Taikwan Pritchett in a *Terry* stop.[1] Pritchett was arrested based on the fruits of that search and has remained in federal custody ever since. After an evidentiary hearing and extensive briefing, the District Court found that the search was unlawful and granted Pritchett's motion to suppress evidence from the search. The government then filed this interlocutory appeal. Because the District Court's decision was not clearly erroneous, we will affirm the granting of the motion to suppress.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] *See Terry v. Ohio*, 392 U.S. 1 (1968).

## I.    BACKGROUND[2]

On July 23, 2021, four officers in an unmarked police vehicle were on a routine patrol in the Riverside neighborhood of Wilmington, Delaware.[3]  The officers observed a group of people on a sidewalk near townhouses and a courtyard.  Pritchett was standing in that crowd with a satchel on his right side.  After a man standing nearby yelled to the group, Pritchett looked in the direction of the man and the unmarked vehicle and then looked away.[4]  He "pulled [a] woman [Yamira Sharpe] close to the side on which he carried the satchel" and walked with her toward the courtyard.[5]  Officers testified that these "furtive movements" led them to believe that Pritchett was "exhibiting characteristics of an armed gunman."[6]

Two of the officers, Williams and Rosario, exited the vehicle to pursue Pritchett as he walked with Sharpe.  Williams shouted, "Stop, police."  At some point, Williams

---

[2] We write for the benefit of the parties and therefore recite only the essential facts.

[3] Police officers testified about their experience in the neighborhood.  However, the District Court found that officers' general experiences in the neighborhood were insufficient to establish that it was high crime, *but see Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000), and the government did not challenge that finding on appeal.

[4] Appx. 16–17.

[5] Appx. 6. The police officers contradicted each other regarding this testimony.  One officer testified that Pritchett saw the vehicle, turned 180 degrees, and began walking away with Sharpe.  Another testified that Pritchett was already walking away with Sharpe and turned to look at the vehicle before continuing with her toward the courtyard.

[6] Appx. 5–6 ("Officers had received training that armed gunmen may turn their body away from police in order to hide a firearm from view[.]"  It was this fact "coupled with the fact that Defendant pulled the woman close to the side on which he carried the satchel and quickly walked away from the vehicle [that] indicated to the Officers that he may be armed.").

3

shouted "Stop, police" again, and Pritchett kept walking.[7] The officers started to jog after

Pritchett, who "'released' or 'pushed' [Sharpe] and ran into the rear of [a townhouse]" just

a few paces away.[8]

A resident of the townhouse yelled "wait wait" as the officers followed Pritchett

into the townhouse. The officers pushed the resident aside, entered the townhouse,[9] pinned

Pritchett against a wall, held a taser to him, and put him in handcuffs. The parties agree

that the moment of seizure occurred when officers took Pritchett into custody inside the

townhouse.[10] Officers then searched Pritchett and recovered a firearm, cash, and drugs.[11]

The government charged Pritchett with felon in possession of a firearm,[12]

possession with intent to distribute heroin and fentanyl,[13] and possession of a firearm in

furtherance of a drug trafficking crime.[14] Pritchett moved to suppress all physical evidence

from the search. On November 2, 2022, the District Court held an evidentiary hearing on

that motion. The District Court granted the motion to suppress on March 2, 2023. The

---

[7] Appx. 6 n.7 (noting that "it is unclear if [the command] occurred before or after the Officers began running").

[8] Appx. 6.

[9] Appx. 18.

[10] The District Court found that it is unclear precisely when the *Terry* stop matured into a formal arrest, but regardless, it held that officers lacked reasonable suspicion at the moment of seizure. *See* Appx. 9–10 n.12.

[11] Appx. 7.

[12] 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

[13] 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

[14] 18 U.S.C. § 924(c)(1)(A). Pritchett was originally prosecuted in Delaware state court, but those charges were *nolle prossed* in favor of this federal prosecution. *See State of Delaware v. Taikwan Pritchett*, 2107013044 (Aug. 6, 2021).

government moved for reconsideration, which the court denied. The government then filed this interlocutory appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3731. We review the District Court's findings of fact for clear error and its conclusions of law de novo.[15] Clear error review is a "highly deferential" standard.[16] "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."[17]

## III. DISCUSSION

Brief investigatory stops, often referred to as *Terry* stops, are constitutional if they are supported by reasonable suspicion of criminal activity.[18] "Reasonable suspicion is evaluated at the moment of a seizure"[19] from the perspective of a "reasonable, trained officer."[20] While reasonable suspicion is a low threshold, officers must have at least some "minimal level of objective justification" for the search that rises above an "inchoate and

---

[15] *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008).
[16] *Id.*
[17] *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985).
[18] *Terry v. Ohio*, 392 U.S. 1, 27 (1968). "[T]he activity of which the detainee is suspected must actually be *criminal*," and "a mere allegation that a suspect possesses a gun, without more, does not justify a stop." *Johnson v. Campbell*, 332 F.3d 199, 208–09 (3d Cir. 2003).
[19] *United States v. Amos*, 88 F.4th 446, 451 (3d Cir. 2023). A seizure can occur in two ways: "a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful," or "submission to 'a show of authority.'" *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).
[20] *Johnson*, 332 F.3d at 206.

unparticularized suspicion or hunch."[21]  There is no mathematical formula for evaluating reasonable suspicion:  the court must consider the totality of the circumstances and weigh the facts appropriately.[22]

The government urges reversal for two reasons.  First, it argues that furtive movements and flight in a high crime neighborhood amount to reasonable suspicion as a matter of law.  Second, the government asserts that the District Court weighed the evidence improperly.[23]

The District Court did not err in holding that the *Terry* stop was not justified as a matter of law.  As to flight, unprovoked flight may support a finding of reasonable suspicion, but we have held that flight, and even headlong flight, does not always justify a *Terry* stop.[24]  The District Court found that the flight here was not very suspicious.[25]

As to furtive movements which may also support a finding of reasonable suspicion, the District Court heard testimony from the officers, reviewed body camera footage, weighed that evidence, and found no sufficiently furtive conduct to require a finding of reasonable suspicion.[26]  This is precisely the type of evidence that District Courts are best

---

[21] *Wardlow*, 528 U.S. at 123–24 (quoting *Terry*, 392 U.S. at 27).
[22] *United States v. Cortez*, 449 U.S. 411, 417 (1981); *United States v. Graves*, 877 F.3d 494, 498 (3d Cir. 2017).
[23] Judge Roth notes that from her experience as a District Judge, in light of the facts presented here, she might have weighed the evidence differently and found reasonable suspicion of criminal activity.  Such a difference of opinion is not of course a basis for reversal.  *See Anderson*, 470 U.S. at 573–74.
[24] *Wardlow*, 528 U.S. at 123–25 (noting that "unprovoked flight is [more than] a mere refusal to cooperate").
[25] Appx. 15.
[26] Appx. 16.

positioned to evaluate, and the District Court did not err by declining to treat these facts as dispositive.

As to the neighborhood, the District Court described the available evidence, found it failed to establish the area was high crime,[27] and concluded that "even if the Court were to find that the area is high crime, the totality of the circumstances would not support a finding of reasonable suspicion."[28]

The District Court did not err in determining that flight, furtive movements, and neighborhood conditions, on their own and in combination, do not categorically require a finding of reasonable suspicion as a matter of law.[29]  It correctly declined to treat any condition as legally dispositive and looked to the totality of the circumstances.[30]  We see no legal error here, so we proceed to ask whether the District Court clearly erred in its findings of fact.

The government makes several arguments that the District Court should have weighed the facts differently.  None show clear error.  First, the government argues that the District Court gave unduly reduced weight to the officers' testimony about Pritchett's furtive movements.  Where the evidence was consistent, the District Court did not ignore

---

[27] Appx. 11–13.
[28] Appx. 17 n.13.
[29] *Graves*, 877 F.3d at 498 (requiring courts to consider "the totality of the circumstances leading up to the moment of the defendant's seizure").
[30] *See* Appx. 16–19.

uncontroverted facts.[31] Where the District Court gave evidence reduced weight, it did so in part because the officers' testimony was contradictory.[32] We see no clear error.

Second, the District Court evaluated Pritchett's furtive movements and whether officers reasonably believed that Pritchett knew about the police presence.[33] That was proper. The District Court considered the furtive movements themselves and, in light of the officers' contradictory testimony, assigned them reduced weight.[34] That was not clear error.

Third, the government repeats that the District Court wrongly discounted Pritchett's flight under *Wardlow*.[35] It did not. The District Court did not clearly err in assigning these facts little weight. Ultimately, the court found that Pritchett's flight did not justify the *Terry* stop.

## IV. CONCLUSION

If we were tasked with deciding this case in the first instance, we may have reached a different conclusion. But that is not the role of the appellate court. We recognize that an appellate court may not reverse the District Court's findings of fact absent clear error. As such, we ask, and answer, two questions. Did the District Court commit clear error in its factual findings? The answer is no. Thus, we next ask whether the facts, as found by the District Court, show that the officers had reasonable suspicion. Even on a de novo review,

---

[31] Appx. 16.
[32] Appx. 16.
[33] Appx. 23–24.
[34] Appx. 16–17.
[35] Appx. 14.

we conclude that the facts as found by the District Court—short flight and some furtive movements—do not establish reasonable suspicion.[36] We will affirm the order of the District Court granting the motion to suppress.

---

[36] Judge Bibas would reverse. In his view, the officers had reasonable suspicion based on Pritchett's furtive movements and flight after the police ordered him to stop.