**UNITED STATES of America**

v.

**Charles E. ATWOOD, II, Appellant.**

**No. 09–2419.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 24, 2009.

Filed Oct. 13, 2009.

828

Bruce Brandler, Esq., Office of United States Attorney, Harrisburg, PA, for Plaintiff–Appellee.

Frederick W. Ulrich, Esq., Office of Federal Public Defender, Harrisburg, PA, for Appellant.

Before: BARRY, FISHER and JORDAN, Circuit Judges.

OPINION OF THE COURT

JORDAN, Circuit Judge.

Charles E. Atwood, II pled guilty to causing others to make false statements to the United States, in violation of 18 U.S.C. §§ 1001, 2(b), and was sentenced to twelve months in prison. He appeals his sentence, arguing that, when determining his Sentencing Guidelines range, the District Court erred by incorrectly calculating the amount of loss caused by his offense. Because the District Court did not clearly err in determining the loss amount and cor-

rectly rejected Atwood's argument for an offset of the loss, we will affirm.

## I. Background

Atwood served as president, chief executive officer, and board member of Gichner Systems Group, Inc. ("Gichner"), a company that designs, manufactures, markets, and sells military and commercial shelters and related goods. A significant portion of Gichner's business involves supplying shelters to the United States armed forces under contracts with the Department of Defense ("DOD"). Such contracts are subject to various disclosure and accounting requirements under the Truth in Negotiations Act ("TINA"), 10 U.S.C. § 2306a, and the Federal Acquisitions Regulations System ("FAR"), 48 C.F.R. § 1.101, *et seq.* TINA and FAR require defense contractors to provide the government with accurate cost and pricing data prior to being awarded contracts that exceed certain monetary thresholds. *See* 10 U.S.C. § 2306a(a)(1). Contractors may not receive payment for goods and services supplied under ethically suspect circumstances, such as transactions involving conflicts of interest. *See* 10 U.S.C. § 2306a(h)(1); 48 C.F.R. § 31.205–33(c)(3) (stating that the government will not bear costs for "services obtained . . . in violation of any statute or regulation prohibiting improper business practices or conflicts of interest").

In 1995, Gichner suffered financial difficulties and began outsourcing engineering and marketing functions as a cost-reduction measure. In July 1996, Gichner granted B & B Engineering Group, Inc. ("B & B") exclusive rights to market Gichner products east of the Mississippi River. B & B received substantial fees and commissions for its services.

Between 1996 and August 2004, Gichner was awarded ten contracts that were subject to TINA and FAR. The cost of each contract included funds that others at Gichner paid to B & B as fees and commissions for marketing services. Unbeknownst to Gichner, Atwood and his wife owned a controlling stake in B & B, an interest that was subject to TINA and FAR disclosure requirements. Gichner first learned of the Atwoods' affiliation with B & B in August 2004, and the newly discovered conflict of interest meant that Gichner officers had inaccurately certified the company's TINA and FAR data between 1996 and 2004. Gichner's incomplete certifications resulted in payments of $294,479 that the government claims would not have been approved had it known of Atwood's conflict. The government and Gichner eventually settled those claims for the full amount of the alleged overpayment.

On December 5, 2007, the government filed a one-count criminal information against Atwood, charging him with causing Gichner officials to make false statements in the form of inaccurate TINA certifications. On December 20, 2007, Atwood pled guilty pursuant to a written plea agreement. The government agreed that, for purposes of sentencing, it would recommend that the loss amount did not exceed $294,479. Atwood reserved the right to contest the loss amount at sentencing.

On June 9, 2009, the United States Probation Office issued a presentence report ("PSR") that valued the loss resulting from Atwood's conduct at $294,479. It assigned Atwood a base offense level of six and applied a twelve-level enhancement under § 2B1.1(b)(1)(G) of the Sentencing Guidelines because the loss amount was more than $200,000 but less than $400,000.[1] The

---

1. Atwood was sentenced in accordance with the 2007 edition of the Sentencing Guidelines. We apply the same version of the Guidelines to the issues presented on appeal. *See United States v. Wise,* 515 F.3d 207, 220 (3d Cir. 2008).

Probation Office also recommended an additional two-level increase because he had abused a position of trust and a three-level reduction for acceptance of responsibility. Based on these adjustments, it concluded that Atwood had an offense level of 17, a criminal history category of I, and a Guidelines range of 24 to 30 months in prison.

Atwood objected to the PSR, arguing that the court should reduce the loss amount by the value of the services that B & B rendered to Gichner. At the hearing to resolve the loss-related issues, the government called two witnesses to explain its loss assessment. First, it called Special Agent Tiffany Linn, who testified that she interviewed four of the government contracting officers who negotiated the contracts at issue. Linn explained that none of the officers would have approved the B & B fees and commissions had they known of Atwood's self-dealing.

Next, the government called Jeffery LaRock, a supervisory auditor for the Defense Contract Audit Agency. LaRock testified that contractors must submit general and administrative ("G & A") expense rates to the DOD before contracts are awarded. The G & A rate is the ratio of the contractor's firm-wide administrative costs to the total cost of its business operations. *See* 48 C.F.R. § 2.101. It represents costs attributable to general business operations rather than those generated by a particular contract. *Id.* Contractors use their G & A rates as negotiation tools during the bidding process, and the government relies on those rates to set contract prices.

The G & A rates that Gichner submitted during the bidding process included commissions and fees paid to B & B that would not have been incorporated into the contract price had Atwood disclosed his conflict of interest. The government estimated the overpayment resulting from his offense by revising the prices of Gichner's contracts. It subtracted B & B commissions and fees from Gichner's other administrative costs and calculated a new G & A rate. It then applied the new rate to the contracts at issue and subtracted the resulting total from the amount the government actually paid Gichner. This formula, which was identical to the analysis Gichner employed when negotiating a settlement with the government, yielded a loss amount of $294,479.

Atwood called his own expert, who conceded that the government's figures and methodology for computing the overpayment were sound but argued that the overpayment did not accurately represent the government's loss for three reasons. First, he claimed that the government would have approved some of the B & B expenses had Atwood properly disclosed his self-dealing. Second, he contended that, in arriving at its loss figure, the government applied the new G & A rate to contracts in which B & B did not participate, rendering the government's loss amount overinclusive. Third, he argued that the government had not realized any loss because it both received the shelters and services for which it contracted and recouped approximately $294,000 from Gichner. In the alternative, Atwood argued that he should receive a credit against the loss to the extent of the amounts the government recovered from Gichner.

The District Court rejected each of those arguments. First, it noted that the government would likely have disallowed the fees and commissions paid to B & B had Atwood divulged his conflict of interest, and Atwood had not identified any pertinent statute or regulation to support his assertion that the government would have approved some of the charges. Second, the Court clarified that B & B's commissions affected Gichner's overall G & A

rate, which the government applied to all contracts with Gichner, regardless of whether they contained fees and commissions payable to B & B. Thus, the government necessarily calculated the total loss amount by applying its revised G & A rate to every contract, including those from which B & B did not receive a fee. Third, the Court concluded that the government's receipt of Gichner's products and successful recovery of the overpayments did not vitiate Atwood's culpability for initially inducing the loss and that he remained responsible for the full $294,479.

The Court also concluded that under § 2B1.1 of the Sentencing Guidelines a defendant may receive a credit against a loss only if the loss is paid back before an offense is detected. Atwood was ineligible for a credit because he did not repay the B & B commissions before Gichner or the government detected the overcharge.

Based on these conclusions, the District Court determined that Atwood's Guidelines range was 24 to 30 months in prison. The Court imposed a sentence of 12 months, finding that a below-Guidelines sentence adequately deterred Atwood from engaging in future criminal conduct. It also ordered Atwood to pay Gichner restitution in the amount of $294,479. Atwood filed a timely appeal, arguing that the District Court erred in computing the loss amount and by failing to give him a credit against the loss.

## II. Discussion[2]

We review a district court's factual findings at sentencing, including the amount of any relevant monetary loss, for clear error, and we exercise plenary review over interpretations of the Sentencing Guidelines. *United States v. Jimenez,* 513 F.3d 62, 85–86 (3d Cir.2008); *United States v. Kushner,* 305 F.3d 194, 197 (3d Cir.2002). At

sentencing, the government must prove the loss amount necessary to trigger a sentencing enhancement by a preponderance of the evidence. *Jimenez,* 513 F.3d at 86. "Although the burden of persuasion remains with the Government, once the Government makes out a prima facie case of the loss amount, the burden of production shifts to the defendant to provide evidence that the Government's evidence is incomplete or inaccurate." *Id.* On appeal, Atwood advances the same three arguments that he raised before the District Court. We will address each in turn.

■ First, Atwood claims that the loss amount is less than $294,479 because the government would have allowed some of B & B's fees and commissions notwithstanding his conflict of interest. The District Court properly rejected this argument. Besides being utterly speculative, Atwood's claim runs contrary to the applicable federal regulation, 48 C.F.R. § 31.205–33, which states that "[p]rofessional and consultant services ... obtained, performed, or otherwise resulting in violation of any statute or regulation prohibiting improper business practices or conflicts of interest" are "unallowable." 48 C.F.R. § 31.205–33(c)(3). Agent Linn testified that none of the government contracting officers she interviewed would have approved any portion of the B & B costs due to Atwood's conflict. Atwood's guesswork regarding costs that the government might have allowed is inadequate to rebut that evidence.

■ Second, Atwood argues that the government's loss calculation is inflated because it applies the revised G & A rate to all Gichner contracts, regardless of whether B & B received commissions from them. As the District Court explained, however, that argument ignores the meth-

**2.** The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

ods by which contractors bid for DOD contracts and the government sets rates. Because the fees that Gichner paid to B & B were used to calculate the G & A rate that determined the price for all contracts-not just those for which B & B received fees-the government appropriately applied the new G & A rate to all the contracts at issue.

Finally, Atwood argues that the government did not suffer a loss because it received both the shelters and services it contracted for and the $294,479 that Gichner paid to settle the TINA and FAR claims. In a line of reasoning that demonstrates man's capacity for creative self-justification, Atwood contends that the recoupment from Gichner allowed the government to obtain Gichner and B & B's combined services at a below-contract price, resulting in a "windfall" to the government. (Appellant's Opening Brief at 20.) As the District Court correctly noted in rejecting that argument, the government would not have allowed B & B's costs had Atwood disclosed his conflict of interest in the first place. B & B's satisfactory performance of its obligations to Gichner does not exonerate the unallowable costs contained in the purchase contracts. Moreover, the reimbursement that Gichner paid to the government did not prevent the parties affected by Atwood's offense from realizing an actual loss. Both Gichner and the federal government were victims of Atwood's crime. The government's recoupment from Gichner does not absolve the loss because no one has yet made Gichner whole. *See* U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 cmt. n. 3(A)(i) (2007) (defining "actual loss" as "the reasonably foreseeable pecuniary harm that resulted from the offense"). The District Court recognized this and properly required Atwood to make restitution to Gichner for the amounts that Gichner paid to the government. Hence, Atwood may not rely upon Gichner's reimbursement to avoid the loss caused by his criminal conduct.

Atwood relatedly argues that the District Court should have given him credit against the loss for the services rendered by B & B. Application Note 3(E) to § 2B1.1 of the Sentencing Guidelines provides that the amount of "[l]oss shall be reduced by . . . [t]he money returned, and the fair market value of the property returned and the service rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." *Id.* cmt. n. 3(E)(i). The flaw in Atwood's reasoning is that B & B rendered services to Gichner, not to the federal government. We question whether Atwood "act[ed] jointly" with Gichner such that he may claim credit for benefits and services that Gichner provided the federal government, but we need not resolve the issue because, in any event, Gichner, not the federal government, was the beneficiary of the marketing services provided by B & B. The lack of proof of benefit accruing to the victimized government renders Application Note 3(E) inapplicable on the record in this case. Accordingly, Atwood is not eligible under the Guidelines for a credit against the loss.

## III. Conclusion

The government produced evidence that Atwood's actions caused a loss of $294,479. The District Court weighed Atwood's opposing arguments and found them inadequate to rebut the government's loss assessment. In light of the government's evidence, this ruling was not clearly erroneous. Because the District Court did not clearly err in determining the loss amount and correctly denied Atwood's request for credit against the loss, we will affirm.