NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3879
_____

UNITED STATES OF AMERICA

v.

RASHAD DAPREE EDWARDS a/k/a RAY-RAY

RASHAD DAPREE EDWARDS,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cr-00317-001)
District Judge:  Honorable Paul S. Diamond
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 15, 2011

Before:  SLOVITER, FUENTES and FISHER, *Circuit Judges*.

(Filed: July 22, 2011)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Rashad Dapree Edwards appeals his conviction and sentence on one count of

conspiring to interfere with interstate commerce by robbery, in violation of 18 U.S.C.

§ 1951(a), one count of aiding and abetting the interference with interstate commerce by

robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; and one count of carrying and using a firearm during and in relation to a crime of violence, and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1) and 2.  For the reasons stated herein, we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case.  Therefore, we will set forth only those facts necessary to our analysis.

On June 29, 2008, Edwards, Keith Norman, and Eric Watson, a seventeen-year old minor, entered the Gulf Oil Station in Coatesville, Pennsylvania armed with a shotgun. The three men stole approximately $2,500 and two pre-paid cell phones.  Edwards was arrested about two months after the robbery.

On May 7, 2009, a grand jury in the United States District Court for the Eastern District of Pennsylvania returned an indictment charging Edwards and his co-defendant, Norman, with one count of conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951 (Count I); one count of interference with interstate commerce by robbery, and aiding and abetting, in violation of 18 U.S.C. § 1951 and 2 (Count II); and one count of carrying and using a firearm during and in relation to a crime of violence, and aiding and abetting, in violation of 18 U.S.C. § 924(c)(1) and 2 (Count III).  Edwards proceeded to trial, and the jury convicted him of all three counts of the

2

indictment. Edwards moved for a mistrial based on a witness's allegedly prejudicial comments, but the District Court denied the motion.

On September 22, 2010, the District Court imposed a sentence of 96 months' imprisonment on Counts I and II, and a statutory mandatory minimum consecutive sentence of 84 months' imprisonment on Count III, for a total term of 180 months' imprisonment. Edwards timely appealed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review the denial of a motion for a mistrial based on a witness's allegedly prejudicial comments for abuse of discretion. *United States v. Lore*, 430 F.3d 190, 207 (3d Cir. 2005). We exercise plenary review of the District Court's interpretation and application of the Sentencing Guidelines. *See United States v. Barbosa*, 271 F.3d 438, 452 (3d Cir. 2001). We apply an abuse-of-discretion standard and review a sentence for reasonableness, which requires that the sentence be both procedurally sound and substantively reasonable. *United States v. Wise*, 515 F.3d 207, 217-18 (3d Cir. 2008).

## III.

Edwards raises three issues on appeal. First, Edwards contends that the District Court erred in denying his motion for mistrial after a government witness mentioned his involvement in another, unrelated crime. Second, Edwards alleges that the District Court

3

incorrectly determined that he had used a minor in the commission of the robbery and therefore should not have applied a two-level sentencing enhancement under Section 3B1.4 of the Sentencing Guidelines. Third, and finally, Edwards argues that in light of the recent Amendments to the Sentencing Guidelines, the District Court erred by assessing him one additional criminal history point at sentencing. We will address each contention in turn.

## A. Motion for Mistrial

At trial, Edwards' co-defendant, Norman, testified about Edwards' criminal history. During Norman's testimony, he recalled an unrelated shooting in 2007 between an individual named Jamal Wilson and another person named Mustafa Grimitch. The direct examination by the prosecutor proceeded as follows:

> Q: All right. Were you a witness to this or were you involved in it?
> A: I was involved.
> Q: What were you doing?
> A: I was standing there and Rashad [Edwards] and Wilson were shooting at each other.
> Q: After that incident, were you involved in a shooting incident involving George Rodriguez?
> A: Yes.
> Q: What happened then?
> A: The day before Rashad's preliminary hearing we were - -

(App. at 195-96.)

At this juncture, defense counsel objected and requested a sidebar, at which point she made an oral motion for a mistrial based on Norman's testimony that he had been standing next to Edwards during an unrelated shooting. The District Court denied the

4

motion for a mistrial but proposed a curative instruction that defense counsel could write herself. The defense counsel crafted the following instruction, which was delivered to the jury:

> Members of the jury, you may have heard testimony that Rashad Edwards was present during the commission of another unrelated offense. I am instructing you now, and in the future, that you cannot consider this testimony in any way against Mr. Edwards. You all took an oath to obey my instructions and I'm instructing you, if you heard such testimony, to completely disregard it, and not consider it in any way against this defendant.

(*Id*. at 201-02.)

On appeal, Edwards contends that the District Court abused its discretion in denying his motion for mistrial.

To determine whether a district court abused its discretion by denying a motion for mistrial, we examine "(1) whether [the] remarks were pronounced and persistent, creating a likelihood they would mislead and prejudice the jury; (2) the strength of the other evidence; and (3) curative action taken by the district court." *Lore*, 430 F.3d at 207.

Addressing the first factor, Norman's improper remark was neither pronounced nor persistent. Norman only referenced Edwards' first name – Rashad – and this reference accounted for only a few lines of testimony that spanned several days. Moreover, the District Court commented that he did not even hear Norman's reference to Edwards during the live testimony and doubted that the jury had heard Norman mention Edwards' name. Thus, we do not believe Norman's testimony created a likelihood that it

5

would mislead and prejudice the jury. *See id.* ("A single statement by a witness whose testimony spanned five days hardly can be deemed 'pronounced and persistent.'").

Second, the evidence against Edwards in this case was substantial. The jury heard testimony from Norman that Edwards had joined him in carrying out the robbery. It also saw video evidence of the robbery and testimony from the victims implicating Edwards as one of the assailants. Finally, a neighbor of Edwards testified that on the night of the robbery Edwards ran into her house carrying a cash register and provided her with a firearm that she was to deliver to Edwards' sister.

We conclude that the curative action taken by the District Court appropriately remedied any prejudice that Edwards potentially incurred. The District Court delivered a thorough instruction to the jury that it was to disregard the impermissible testimony. We generally "presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant." *Greer v. Miller*, 483 U.S. 756, 767 n.8 (1987) (internal citations and quotation marks omitted); *see also United States v. Hakim*, 344 F.3d 324, 326 (3d Cir. 2003). The instruction in this case was drafted by defense counsel and read to the jury immediately after Norman's remarks. *See id.* (noting that the timing of the curative jury instruction may impact whether the damage from improperly admitted testimony can be undone). Moreover, at the end of the case

the District Court reiterated that the jury was not to consider any testimony it was instructed to disregard. Thus, given the thorough curative instruction delivered immediately after Norman's testimony, there is nothing in the record to suggest an overwhelming probability that the jury would be unable to follow the court's instructions.[1]

Therefore, because Norman's improper testimony was neither pronounced nor persistent, and in light of the strength of the other evidence presented at trial against Edwards, and the District Court's curative instruction, we conclude that the District Court did not abuse its discretion in declining to grant a mistrial.

### B. Two-level Adjustment for Use of a Minor

At sentencing, the District Court enhanced Edwards' offense level by two levels, pursuant to U.S.S.G § 3B1.4, because Edwards' codefendant, Eric Watson, was a minor at the time of the robbery. Edwards initially argued before the District Court that Watson had been a willing participant in the robbery, and therefore Edwards had neither recruited nor solicited Watson to participate in the robbery. *See* § 3B1.4 (stating that the increase by two levels only applies if the "defendant used or attempted to use a person less than eighteen years old"). After hearing argument and reviewing trial testimony, the District

---

[1] We note that, on appeal, Edwards appears to argue that Norman's brief reference at the end of his testimony to "Rashad's preliminary hearing" also entitled Edwards to a mistrial. Notably, this issue was never raised during the original motion at the District Court and is not fully developed in Edwards' argument. Nevertheless, we believe the District Court's curative jury instruction applied equally to the preliminary hearing remark and adequately remedied any potential prejudice this may have caused.

7

Court found that Edwards encouraged Watson to participate in the crime and therefore applied a two-level enhancement due to Edwards' use of a minor.

On appeal, Edwards does not challenge the merits of the District Court's factual determination that he used a minor during the robbery. Instead, Edwards argues that the District Court erred when it applied a two-level enhancement to his base offense level for use of a minor, § 3B1.4, because the facts underlying the enhancement were not found by a jury beyond a reasonable doubt.

We addressed the issue of the proper evidentiary standard for sentencing enhancements in *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (en banc). In *Grier*, we held that "the right to proof beyond a reasonable doubt does not apply to facts relevant to enhancements under an advisory Guidelines regime. Like the right to a jury trial, [it] attaches only when the facts at issue have the effect of increasing the maximum punishment to which the defendant is exposed." *Id*. at 565.

Here, the applicable statutory maximum for Edwards' convictions was twenty years' imprisonment each for Counts I and II, and life imprisonment on Count III. Thus, the § 3B1.4 enhancement could not have increased the maximum penalty to which Edwards was exposed. *See id.* at 561. Accordingly, the District Court was entitled to find the § 3B1.4 enhancement for use of a minor by preponderance of the evidence and was not required to submit this issue to the jury. *Id*. Thus, we affirm the District Court's two-level enhancement for use of a minor.

8

## C. Application of the Amended Sentencing Guidelines

At sentencing, the District Court also added a criminal history point pursuant to U.S.S.G. § 4A1.1(e), because Edwards had committed his offense within two years of being released from prison. Due to this additional point, Edwards was placed in criminal history Category V, instead of Category IV, and consequently his Guidelines range was enhanced from 77-96 months in prison to 92-115 months in prison. Edwards objected to this enhancement in light of the forthcoming Amendment 742, to become effective November 1, 2010, which repealed § 4A1.1(e). The District Court determined that the Guidelines should be applied as they existed and therefore any pending amendments to the Guidelines would not apply to Edwards' sentencing.

On appeal, Edwards argues that the District Court erred by failing to apply this pending Amendment to his Sentencing Guideline calculation. More specifically, he contends that because the pending Amendment was silent on retroactivity, the District Court should have given it retroactive effect.

Edwards' argument is unpersuasive. Generally, a defendant should be sentenced under the Guidelines in effect at sentencing.[2] *United States v. Wise*, 515 F.3d 207, 219-20 (3d Cir. 2008); *see also* 18 U.S.C. § 3553(a)(4)(A) (noting the general rule that a

---

[2] We acknowledge that there are two exceptions to this rule: "first, if applying the version of the Guidelines in effect on the date of sentencing presents an *ex post facto* problem, and second, if a subsequent guideline amendment merely clarifies the law in existence at the time of sentencing, as opposed to working a substantive change in the law." *United States v. Wise*, 515 F.3d 207, 220 (3d Cir. 2008) (internal citations and quotation marks omitted). Neither exception is applicable in this case.

sentencing court should consider the Guidelines "in effect on the date the defendant is sentenced"). Here, Edwards was sentenced on September 22, 2010, eight weeks prior to Amendment 742's effective date. It is undisputed that § 4A1.1(e) was in effect at the time of Edwards' sentencing and there is no evidence that the District Court improperly took Edwards' criminal history point into account under the Guidelines existing at the time. Moreover, the fact that the pending Amendment 742 was silent on retroactivity cuts against having Edwards' criminal history activity retroactively adjusted. *See United States v. Thompson*, 70 F.3d 279, 281 (3d Cir. 1995) (finding that an amendment not designated by the Sentencing Commission in Section 1B1.10 "would not have retroactive effect").

We therefore hold that the District Court properly applied an additional criminal history point to Edwards' sentencing calculation.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.