NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4244
_____

UNITED STATES OF AMERICA

v.

JOSEPH PASSALAQUA,
                              Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 10-cr-667-02)
District Judge:  Honorable Faith S. Hochberg
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 14, 2012

Before:  RENDELL, FUENTES, and CHAGARES, *Circuit Judges*.

(Opinion Filed:  November 29, 2012)
_____

OPINION OF THE COURT
_____


FUENTES, *Circuit Judge*:

In this appeal we are asked to consider the substantive reasonableness of Joseph

Passalaqua's sentence of 190 months for conspiracy to commit robbery in violation of the

Hobbs Act. For the reasons set forth below, we will affirm.

## I.

Because we write primarily for the parties, we set forth only the facts and procedural history relevant to our conclusion.

At the time of his sentencing, Passalaqua was a 57- year-old college graduate, former champion gymnast, and owner of a gymnastics, dance, and karate school.

Between December 2008 and September 2009, Passalaqua was a leader of a conspiracy that was responsible for a string of armed robberies and burglaries in New Jersey and New York. Passalaqua was arrested on September 23, 2009, after he was recorded by a confidential source agreeing to murder three individuals in exchange for a cash payment. Soon after his arrest, Passalaqua began cooperating with the Government, which led to the arrest of several of his co-conspirators. The information that Passalaqua provided revealed his involvement in multiple robberies and burglaries, all of which involved restaurants or the homes of restaurant owners. In each robbery, masked intruders entered at night, bound the victims at gunpoint, and stole money and valuables totaling approximately $215,000. Passalaqua did not enter the premises, handle firearms, or restrain victims, but he identified the victims, planned each of the robberies, and served as the getaway driver in three robberies. Passalaqua chose each restaurant-victim based on a personal vendetta against its owner, such as an unpaid debt or personal conflict. However, Passalaqua initially lied about his involvement in the armed robbery of Barolo Restaurant in New York, later contending that he believed the restaurant "was connected to the mob and [had] fear of retribution." (App. 120.) The lie damaged the

Government's case and prevented it from using Passalaqua as a witness against his co-conspirators.

In October 2010, Passalaqua and his co-conspirators were charged with four counts of robbery and conspiracy to commit robbery in violation of the Hobbs Act, 18 U.S.C. § 1951. On October 27, 2010, Passalaqua agreed to plead guilty pursuant to a plea agreement. The October plea agreement contained a "Guidelines stip," whereby the parties stipulated to an offense level of 30 and, in exchange, the parties would not seek departures, adjustments, or variances, or appeal the sentence if the Court sentenced Passalaqua within the Guidelines range. The plea agreement did not contemplate a § 5K1.1 downward departure for cooperation.

However, in November 2010, the day before Passalaqua's scheduled plea hearing, Passalaqua requested a new plea agreement, which would contain a "fact stip" rather than the Guidelines stip. The fact stip plea stipulated to the same facts contained in the earlier plea agreement but did not stipulate to an offense level or restrict the parties from arguing for variances or departures. The November plea agreement also contained a standard merger clause, stating that it superseded any previous agreement. Passalaqua pleaded guilty on December 7, 2010, pursuant to the fact stip plea agreement.

Prior to sentencing, the United States Probation Department prepared a presentence report ("PSR"), which calculated a total offense level of 31 and a criminal history category of II, resulting in a Guidelines range of 121 to 151 months. At the time the PSR was prepared, Passalaqua had pleaded guilty to nine burglaries and one armed robbery in state court in December 2010, but because he had not yet been sentenced for

3

those state crimes, the Probation Department assigned Passalaqua a single criminal history point under U.S. Sentencing Guideline § 4A1.2(a)(4). Had he been sentenced for the state convictions prior to his federal sentencing, Passalaqua would have faced a criminal history category of VI and career offender status.

At his sentencing hearing, which began in June 2011, Passalaqua requested a reduced weapons-based enhancement, which would lower the total offense level to 30. The Government agreed that an offense level of 30 was appropriate based on the facts stipulated in the plea agreement. Passalaqua also requested a downward departure based on imperfect cooperation and argued about unreasonable disparity between his own and his co-defendants' sentences. The Government, on the other hand, requested an upward variance to the statutory maximum sentence of 20 years based on the violent nature of the offenses and the understated criminal history calculation. The District Court rejected Passalaqua's arguments about unreasonable disparity, finding Passalaqua's conduct more serious than that of his co-conspirators and that he had been a leader of the conspiracy. The Court also rejected Passalaqua's request for an imperfect cooperation departure, finding insignificant benefit for the Government from his cooperation.

There was a lengthy colloquy between the District Court and both parties about the propriety of the Government's request for the upward variance given the initial plea agreement, in which the Government agreed to not request an upward variance. The District Court continued the sentencing hearing for three months in order to hear from the Assistant U.S. Attorney who had agreed to the November plea agreement. Ultimately, the District Court found the Government's request was appropriate and provided Passalaqua

an opportunity to withdraw his plea, which he declined. The Court also emphasized prior to imposing its sentence that it would have imposed the same sentence regardless of whether the Government had requested an upward variance.

In considering the § 3553(a) factors, the Court found particularly significant Passalaqua's gifted background and his insignificant need for educational or vocational training. It stated, "this is one of the most confounding one man crime sprees I have ever seen. . . . How one man could take such gifts that you have and were born with and turn them into such human wreckage is almost unfathomable." (App. 245.) Looking at the nature and circumstances of the offense, the Court was very concerned about the conduct, saying that Passalaqua "destroyed what makes people dignified, whole, happy people, content people, serene people. . . . Because once this kind of trauma happens to people, they can never be mentally the same again." (App. 251-52.) The Court was particularly troubled that Passalaqua chose his victims based on vendettas against people who knew and trusted him. Finally, the Court found relevant that because of a "vagary in the way the Guidelines are worded," Passalaqua's criminal history category of II far understated his criminal history and Guideline range. (App. 258.) The District Court then varied from the Guideline range and sentenced Passalaqua to 190 months and three years of supervised release. Passalaqua timely appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3583(e). We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

On appeal, Passalaqua contends that his sentence of 190 months is substantively unreasonable. He argues that the sentence was premised upon an unwarranted upward variance, motivated by an omission during Passalaqua's proffer sessions, was greater than necessary, and resulted in an unwarranted sentencing disparity.

"[W]e . . . review the substantive reasonableness of the sentence under an abuse-of-discretion standard, regardless of whether it falls within the Guidelines range." *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008). Our appellate review of the reasonableness of a sentence is a two-step process. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). After determining that the District Court's procedure is satisfactory, "we then, at stage two, consider its substantive reasonableness[,] . . . requir[ing] us not to focus on one or two factors, but on the totality of the circumstances." *Id.* (internal citations and quotation marks omitted). "The touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007).

Passalaqua, as the party challenging the sentence, has the burden of demonstrating unreasonableness. *Id.* at 567. He does not argue that the sentence was procedurally unreasonable. Although 55 months greater than the upper limit of Passalaqua's Guidelines range, Passalaqua's sentence was substantively reasonable.

The District Court carefully and expressly considered the § 3553(a) factors, and noted its serious concerns about the circumstances of Passalaqua's conduct, including that he targeted his victims based on his personal relationships with them. It also

discussed at length Passalaqua's personal characteristics, including that he committed such brutal offenses despite his privileged background. Rejecting Passalaqua's disparity argument, the District Court found Passalaqua's conduct to be far more culpable than that of his co-conspirators.

Of particular significance, the District Court found that Passalaqua's criminal history category was greatly understated based on "the idiosyncrasies in the sentencing laws" and the delays in his state sentencing, which would have otherwise resulted in a "very, very high" Guidelines range. (App. 258.) In fact, had Passalaqua's Guidelines range been calculated with the criminal history category of VI that the District Court indicated better represented Passalaqua's actual criminal history, then his Guidelines range would have been 168 to 210 months. Nevertheless, while Passalaqua's 190-months sentence was above the Guidelines range calculated in the PSR based on a category II criminal history, we believe that the District Court carefully "considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 339 (2007). Thus, we conclude that the District Court's sentence of 190 months' imprisonment was substantively reasonable.

**III.**

We have considered Passalaqua's additional arguments and find them to be without merit. For the foregoing reasons, we will affirm the District Court's judgment and sentence.