**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3554
_____

UNITED STATES OF AMERICA

v.

ADRIANO SOTOMAYOR,
a/k/a Arnaldo Morrell
a/k/a Adrian Rodriguez
a/k/a Angel Rodriguez
a/k/a Luis Rodriguez

ADRIANO SOTOMAYOR,
                              Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Cr. Action No. 11-cr-00672-001)
District Judge: Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 18, 2014
_____

Before: CHAGARES, GREENAWAY, JR., and VANASKIE, *Circuit Judges*.


(Opinion Filed: April 7, 2014)

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Appellant Adriano Sotomayor[1] ("Appellant") appeals his Judgment of Conviction

for seventeen counts of wire fraud, in violation of 18 U.S.C. § 1343. Following his

conviction, Appellant received a 216-month term of imprisonment, followed by a three-

year term of supervised release, restitution of $1 million, and a $1,700 special

assessment. Appellant contends that his sentence was substantively unreasonable

because it varied sixty-five months above the high end of his guidelines range, and did

not take into account abuse he had suffered at the hands of the Catholic Church as a

youth.[2] For the following reasons, we will affirm the District Court's Judgment of

Conviction.

## I. Facts and Procedural History

Because we write primarily for the benefit of the parties, we recount only the facts

essential to our discussion.

_____

[1] The official caption from the docket incorrectly spells Sotomayor's name as "Sotomayer."

[2] The Government contends that Sotomayor is also challenging the procedural reasonableness of the sentence. (Appellee Br. 22.) However, Sotomayor makes no mention of a procedural defect in his brief, and instead only challenges the substantive reasonableness of the sentence. We will therefore only address the substantive reasonableness of the sentence.

From May 2009 through February 2012, Sotomayor conducted an "advanced fee" scheme, in which he persuaded his victims to pay a sum of money up-front on the promise that they would later obtain a larger sum of money. Sotomayor primarily targeted Roman Catholic religious orders in Puerto Rico, including many priests and nuns and their family members and friends. Victims never received the promised payments; rather, they received additional requests and demands for ever increasing amounts of money. As the scheme grew, Sotomayor recruited more friends and acquaintances to pick up wire transfers and aid the scheme generally.

The FBI contacted Sotomayor in November 2011 to execute an arrest warrant. Instead of turning himself in, Sotomayor fled. He continued his scheme while on the run, convincing more victims to send money to him in New York and Las Vegas. During his flight, Sotomayor obtained an additional $107,000 through his fraudulent scheme. In fact, while in pretrial detention, Sotomayor continued to operate his scheme from within prison.

Sotomayor entered into an open guilty plea to seventeen counts of wire fraud. The base level for the wire fraud counts was 7. Sotomayor was subject to a 14-level enhancement because the District Court found that the loss directly attributable to him was more than $400,000, but not more than $1 million. Sotomayor was also subject to a four-level enhancement because the offense involved in excess of 50 victims, a two level enhancement because he moved his fraudulent scheme to Las Vegas to avoid being

3

arrested by the FBI, a two-level enhancement because Sotomayor knew, or should have known, that at least one of the victims of the offense was a vulnerable victim, and a two-level enhancement for obstruction of justice. With a two-level reduction for acceptance of responsibility, Sotomayor's adjusted offense level was 29.

Sotomayor's criminal history placed him within criminal history category IV. Taken together, the total offense level of 29 and criminal history category IV, placed Sotomayor in an advisory guidelines range of 121 to 151 months of imprisonment.

Prior to Sotomayor's sentencing hearing, the government moved for an upward departure, pursuant to U.S.S.G. § 5K2.3, based on the psychological harm his victims suffered. As support, the government submitted statements of several victims, and presented testimony of several victims at the hearing. In addition, the government asked the court to grant a four-level upward variance and impose a sentence of 235 months' imprisonment. The government stressed that the harm in this case far exceeded the financial loss because Sotomayor destroyed the victims' reputations and their standing in the community. They also noted that Sotomayor began the fraudulent scheme in this case less than a month after he had been released from prison for an earlier fraudulent scheme.

During his sentencing hearing, Sotomayor presented a letter of allocution asserting that the sexual abuse he had sustained at the hands of members of the Catholic clergy starting at the age of thirteen was the impetus behind his scheme. He perpetrated his wrongdoing principally against members of the Catholic Church, as a vendetta for the

4

prior abuse he had suffered.

The District Court adopted the guidelines calculation proposed by the Probation office with a final guidelines offense level of 29. In considering the § 5K2.3 upward departure motion, the District Court decided that it would consider the evidence presented to determine if an upward variance was warranted. Ultimately, the District Court declined to grant an upward departure.

In considering the § 3553(a) factors, the District Court concluded that the offense was extremely serious, citing the scope and length of the fraud, the amount of the deception involved, and its gravity. The District Court also noted that Sotomayor broadened the reach of the fraud by convincing the immediate victims to solicit money from others. It stressed that Sotomayor was a recidivist who had not been deterred by his prior convictions, and that there was a great need to protect the public from Sotomayor's future criminal activity. The District Court also dismissed Sotomayor's claim that the scheme was retaliation for abuse suffered as a young person. Specifically, the Court found that even if the events had occurred as claimed, they did not justify or excuse Sotomayor's criminal actions forty years later. As a result, the District Court granted the four-level upward variance and sentenced Sotomayor to a term of 216-months of imprisonment, which is sixty-five months above the guideline range.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction

5

pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review the District Court's sentencing decision under an abuse of discretion standard. *Rita v. United States*, 551 U.S. 338, 364 (2007) (citing *United States v. Booker*, 543 U.S. 220, 261 (2005)).

### III. Legal Standard

We have held, in light of *Booker*, that a sentencing court must follow a three-step sequential process in determining an appropriate sentence. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). Courts must: (1) correctly calculate a defendant's sentence under the U.S. Sentencing Guidelines; (2) formally rule on the motions of both parties and state on the record whether they are granting a departure, how that departure affects the guidelines calculations, and take into account the Court's pre-*Booker* case law, which continues to have advisory force; and (3) consider those arguments in light of the § 3553(a) factors. *Id.* The sentencing court must provide an explanation for imposing a sentence that is sufficient to satisfy the appellate court that the district court considered the parties' arguments, and had a reasoned basis for exercising its own decision-making authority. *Id.* District courts have discretion when sentencing, and appellate review is limited to determining whether the sentence imposed is reasonable.

"The touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc); *see also United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008) ("Our responsibility on appellate review of

6

a criminal sentence is limited yet important: we are to ensure that a substantively reasonable sentence has been imposed in a procedurally fair way."). "[I]f the sentence is outside the Guidelines range, the [appellate] court may not apply a presumption of unreasonableness." *Gall v. United States*, 552 U.S. 38, 51 (2007).

"Our appellate review proceeds in two stages." *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009). First, we ensure "that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* (quoting *Gall*, 552 U.S. at 50). If the district court's procedure is satisfactory, we move to stage two and consider the substantive reasonableness of the sentence. *Id.* (citing *Levinson*, 543 F.3d at 195).

The substantive component requires the appellate court to take into consideration the totality of the circumstances. *United States v. Lychock*, 578 F.3d 214, 217 (3d Cir. 2009). In looking at the totality of the circumstances, a sentence is substantively reasonable unless "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Friedman*, 658 F.3d 342, 360 (3d Cir. 2011) (internal quotations omitted). Although the appellate court considers the extent of any variance from the advisory

guidelines range, it must also give due deference to the district court's decision that the §

3553(a) factors, on the whole, justify the extent of the variance. *Id.* The substantive

reasonableness of each sentence must be evaluated on its own terms, based on the reasons

that the district court provided, in light of the particular facts and circumstances of that

case. *Tomko*, 562 F.3d at 573.

## IV. Analysis

Sotomayor contends that the District Court's sentence of 216 months'

imprisonment is substantively unreasonable. He argues that the District Court failed to

provide sufficient justification for imposing the sixty-five-month sentence above the

upper limit of the guidelines range, abusing its discretion in granting a four-level upward

variance.

Sotomayor argues that the District Court's justification for the sentence was

"generic." (Appellant Br. 21.) Sotomayor also claims that the factors used to justify the

upward variance were already accounted for in the guidelines range. Specifically,

Sotomayor argues that "the seriousness of the fraud offense," which the District Court

relied upon in part to justify the upward variance, was already accounted for in the

upward adjustments captured in Sotomayor's sentencing exposure. (Appellant Br. 22.)

Sotomayor also notes that the District Court's assessment of his lack of deterrence from

participating in fraudulent schemes was also already accounted for in his criminal history

category.

This argument is without merit. While Sotomayor is correct that some of the justifications for the upward variance are also used in calculating the guidelines range, this is entirely permissible and does not result in a substantively unreasonable sentence. A court is not precluded from deviating from the guidelines range on the basis of a particular factor simply because that fact was also considered in determining the guidelines range. *See United States v. Greenidge*, 495 F.3d 85, 103 (3d Cir. 2007) ("We emphasize that a sentencing court is not prohibited from considering the factual basis underlying a defendant's sentence enhancements, and indeed, *should* consider those facts in order to tailor the sentence to the defendant's individual circumstances."). The District Court was statutorily empowered to consider Sotomayor's criminal history in the context of the § 3553(a) factors in determining to impose an upward variance, as well as in the guidelines calculation.

Second, Sotomayor argues that the sentence was substantively unreasonable because the District Court did not consider, as a mitigating factor, that Sotomayor was motivated by vengeance based on the abuse he had suffered at the hands of the Catholic Church. The record reflects exactly the opposite. The District Court did address Sotomayor's justification, but rejected it as a mitigating circumstance. The District Court said, "I do believe that there is no nexus whatsoever between the events that occurred 40 years ago and the crimes that he has now committed." (App. 281.)

The District Court reviewed the § 3553(a) factors and concluded that a sentence

9

above the guidelines range but less than the statutory maximum was sufficient but not greater than necessary to comply with the purposes of sentencing. The reasons the court gave for granting an upward variance were not "generic," but specific and based on the totality of the circumstances. Given that the District Court did examine the totality of the circumstances in sentencing Sotomayor, we cannot say that "no reasonable sentencing court would have imposed the same sentence on [Sotomayor] for the reasons the district court provided." *Tomko*, 562 F.3d at 568. Accordingly, Sotomayor has failed to show that the sentence was substantively unreasonable.

## IV. Conclusion

Given the facts and totality of the circumstances, the District Court's sentence of 216 months of imprisonment was substantively reasonable. We will affirm the District Court's Judgment of Conviction.