**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2730
_____


UNITED STATES OF AMERICA

v.

RICKIE HORVATH,

Appellant


_____

On Appeal from the United States District Court
for the District of New Jersey
(D. N.J. Crim. No. 2-15-cr-400-3)
District Judge: Hon. Esther Salas
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 24, 2018

Before: AMBRO, SCIRICA, and SILER, Jr.♦, <u>Circuit Judges</u>

(Filed: April 30, 2018)
_____

OPINION*
_____

_____

    ♦ Honorable Senior Judge Eugene E. Siler, Jr., Circuit Court Judge for the Sixth Circuit
Court of Appeals, sitting by designation.

    * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**SILER**, *Circuit Judge*

In this criminal matter, defendant Rickie Horvath appeals his sentence of 41 months' imprisonment for conspiracy to possess and distribute oxycodone. He argues that this term of imprisonment is both procedurally and substantively unreasonable because he "is essentially dying." For the reasons stated herein, we will affirm.

## I.

Horvath is fifty-six years old and has suffered from heart disease for several years. He first underwent open-heart surgery in 1993. Horvath then had coronary artery bypass grafting in 1997, vein grafting in 2004, and a pacemaker implant in 2006.

Between February and August 2014, Horvath participated in a drug-trafficking organization. He obtained and filled oxycodone prescriptions and then distributed the drugs, both directly and via co-conspirators. The scheme involved more than fifteen participants, who illegally distributed a significant amount of prescription drugs throughout New Jersey. Horvath was arrested in 2014 and charged with conspiracy to possess and distribute a mixture and substance containing oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846.

During his pretrial release, Horvath was hostile, disrespectful, and combative with supervising officials. He also tampered with location-monitoring equipment and often failed to follow instructions. As stated by the district court, "[H]is behavior on pretrial release was deplorable. . . . He was defiant. He was belligerent." In September 2015, Horvath was arrested and charged in state court with unrelated offenses. He pleaded

2

guilty to the federal drug charge in 2016, whereby he admitted responsibility for 35.47 grams of oxycodone. He was transferred to federal custody in July 2016.

Horvath petitioned for bail in March 2017, based on his congestive heart failure, diabetes, and hypertension. The medical director at the jail where Horvath was housed submitted files indicating that Horvath was transported from the jail to the hospital on several occasions for cardiac events. The physician described Horvath's prognosis as "extremely poor" and his life expectancy as "obviously compromised." The medical director further noted that Horvath's heart functioned "with an ejection fraction of 30% which is an objective indicator of advanced heart failure."

The district court granted Horvath bail pending sentencing, with the condition that he be confined to his home during the interim. While on release between March and his sentencing hearing in July 2017, Horvath only saw his attending physician on three occasions. He claims that he did not visit his doctor more frequently because he lost Medicaid benefits while incarcerated.

At Horvath's sentencing, the district court determined that his guidelines range was 46 to 57 months' imprisonment, based on a total offense level of 21 and a criminal history category of III. Horvath's presentence investigation report indicated that he "occupied a neutral role in the conspiracy." Information suggested neither that he maintained a leadership role in the organization, nor that he was less culpable than the average co-conspirator.

Horvath moved for a variance based on his medical condition, and he submitted a letter from his physician in support. He requested a sentence of time served—

approximately eight months. The government argued in favor of a mid-guidelines sentence. The district court considered Horvath's arguments in favor of his requested sentence but concluded that defense counsel presented a much "grimmer picture" of Horvath's medical condition than the submitted documents revealed. The court acknowledged that Horvath was sick and had "a serious condition," but the letter from his doctor stated that Horvath's health "is being maintained and managed" and that Horvath was in a "stable condition." Although defense counsel argued that Horvath was "dying," he did not present supporting testimony from a doctor. Moreover, the district court found that the Bureau of Prisons ("BOP") was "more than capable of handling" his health concerns. The court asserted that "Mr. Horvath has Mr. Horvath to blame, and only Mr. Horvath to blame" for the situation in which he found himself.

The court extended some amount of leniency, however, and granted Horvath's motion for a downward variance. It chose to essentially treat him as a category II offender—resulting in a guidelines range of 41 to 51 months. Citing the serious oxycodone epidemic, the need for general and specific deterrence, and the BOP's ability to provide Horvath with adequate medical care, the court sentenced Horvath to 41 months' imprisonment. It also elected to allow Horvath to voluntarily surrender.

Following his sentencing, Horvath requested that the district court stay his surrender date for thirty days in order to allow him to recuperate from his stent implant, which he underwent in August 2017. He also moved for bail pending appeal, repeating arguments related to his medical condition. The district court ordered a stay of his surrender date for thirty days, moving it to October 5. It denied his motion for bail

4

pending appeal, however, finding that Horvath had not explained how it improperly calculated the guidelines range, relied on clearly erroneous facts, or failed to adequately explain the imposed sentence. Horvath filed a bail application with this court, and he requested another stay of his surrender date. We extended Horvath's surrender date to October 19 and denied his bail application.

On appeal, Horvath argues that, given his physical condition, his sentence is procedurally and substantively unreasonable. He asserts that the district court abused its discretion by failing to "adequately weigh the credible and compelling medical evidence." Horvath also contends that his sentence is "excessive and fundamentally unfair." The government maintains that Horvath played an "extensive role" in the drug-trafficking conspiracy and that the court imposed a merciful sentence of imprisonment after considering Horvath's arguments.

## II.

We review imposed sentences for abuse of discretion. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). We must "ensure that a substantively reasonable sentence has been imposed in a procedurally fair way." *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008). The challenging party bears the burden of demonstrating unreasonableness at both the procedural and substantive stages of the court's review. *See Tomko*, 562 F.3d at 567.

### A. Procedural Reasonableness

Where a defendant, such as Horvath, claims that his sentence is procedurally unreasonable, the court must make sure "that the district court committed no significant

procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Grober*, 624 F.3d 592, 599 (3d Cir. 2010) (internal quotation marks and citation omitted). "A [factual] finding is clearly erroneous when[,] although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008) (internal quotation marks and citation omitted). We must also ensure that the district court "respond[ed] to defense counsel's colorable arguments for mitigation," *United States v. Thornhill*, 759 F.3d 299, 310 (3d Cir. 2014), by pointing to "a factual basis in the record," *United States v. Merced*, 603 F.3d 203, 224 (3d Cir. 2010).

Here, the parties do not dispute that the district court correctly calculated Horvath's guidelines range. In fact, the court varied downward one criminal history category and treated Horvath as a category II offender. There is also no indication in the record that the district court "treated the Guidelines as mandatory." *Grober*, 624 F.3d at 599. After varying from Horvath's original range of 46 to 57 months' imprisonment to a range of 41 to 51 months, it chose to impose a sentence at the bottom of the new range— 41 months' imprisonment—in light of the relevant § 3553(a) factors. It noted factors such as the need for general and specific deterrence, the serious nature of Horvath's offense conduct, and the BOP's ability to care for Horvath's medical needs.

6

Moreover, the district court thoroughly considered defense counsel's arguments in favor of a sentence of time served. The court acknowledged that Horvath was sick, but after considering the submitted evidence, it reached a different conclusion as to the extent of his illness. The district court did not err by concluding that Horvath's health was poor, but stable, and that the BOP could adequately care for Horvath. The record supports such a conclusion, and we are not "left with the definite and firm conviction that a mistake has been committed." *Wise*, 515 F.3d at 218 (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993)). Thus, the district court did not impose a procedurally unreasonable sentence.

## B. Substantive Reasonableness

Having found the district court's procedure satisfactory, we must next evaluate the substantive reasonableness of the imposed sentence, taking into account the totality of the circumstances. *See United States v. Sotomayor*, 563 F. App'x 123, 126–27 (3d Cir. 2014). "The substantive reasonableness of each sentence must be evaluated on its own terms, based on the reasons that the district court provided, in light of the particular facts and circumstances of that case." *Id.* at 127 (citing *Tomko*, 562 F.3d at 573). We will "affirm a procedurally sound sentence as substantively reasonable 'unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided.'" *Grober*, 624 F.3d at 599 (quoting *Tomko*, 562 F.3d at 568).

Here, as set forth above, the district court weighed the relevant § 3553(a) factors and granted Horvath's requested variance, albeit not to the extent he desired. Horvath

7

argues that his term of imprisonment "is significantly more severe than any punishment ever experienced by him and serves no appreciable purpose." In terms of specific deterrence, however, this fact more logically lends itself to a longer sentence, rather than a shorter sentence. Horvath also contends that the sentence imposed is "excessive and fundamentally unfair for a man who is essentially dying." But sickness alone does not warrant a sentence void of prison time and does not translate Horvath's relatively short term of imprisonment into a "life sentence." *See United States v. Watson*, 482 F.3d 269, 273 (3d Cir. 2007) (noting that "the mere fact that a defendant may not survive beyond his sentence does not provide a basis for a shorter sentence").

Moreover, the district court granted mercy by imposing a below-guidelines sentence, after reasonably concluding—based on medical records before the court—that Horvath's condition was not nearly as severe as he claimed. Indeed, Horvath managed to play an active role in the drug-trafficking organization at issue while he was already suffering from heart disease. Horvath has failed to demonstrate that "no reasonable sentencing court would have imposed the same sentence on [him] for the reasons the district court provided." *Grober*, 624 F.3d at 599.

## III.

In sum, we are convinced that "a substantively reasonable sentence has been imposed in a procedurally fair way," *id.*, and will affirm the district court's Judgment.

8