**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-4181

_____

UNITED STATES OF AMERICA

v.

ANGELA DE JESUS-CONCEPCION,
                                        Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-13-cr-00084-001)
District Judge:  Hon. William H. Walls

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 14, 2016

Before:   AMBRO, JORDAN, and GREENBERG, *Circuit Judges*.

(Opinion Filed:  June 16, 2016)

_____

OPINION*

_____

JORDAN, *Circuit Judge*.

Angela de Jesus-Concepcion appeals her conviction and sentence, following a jury

trial before the United States District Court for the District of New Jersey, for false

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

representation of citizenship, use of a passport secured by false statement, and aggravated identity theft. We will affirm.

## I. Background

De Jesus-Concepcion was arrested on March 17, 2012, when she attempted to reenter the United States through the Newark, New Jersey, Airport using a false passport in the name of Isis Carolin Pichardo, a name she also fraudulently signed to her customs declaration. United States Customs and Border Protection ("CBP") officers identified de Jesus-Concepcion for inspection when, as part of routine screening, they discovered that the passport on which she was travelling had been issued under two different applications with pictures of different women. After detaining her, the officers checked her fingerprints in an immigration database and confirmed her true identity, which did not match her passport and customs declaration form.

De Jesus-Concepcion had also obtained a false driver's license and Certificate of Naturalization with Ms. Pichardo's information and de Jesus-Concepcion's photograph. She had used those documents to apply for the false passport by claiming that her prior passport had been lost. De Jesus-Concepcion wanted the false documents for international travel because she was not a U.S. citizen and was in this country illegally. She had been denied legal permanent residency, and she had already been ordered to depart the United States. As early as 1997, she had been arrested and placed into removal proceedings. Subsequently, when her application for legal permanent residency was denied in 2005, the notice informed her that "[i]f you fail to depart from the United States, proceedings will be instituted to enforce your departure." (App. 1013.)

2

An indictment was handed down charging de Jesus-Concepcion with false representation of U.S. citizenship, in violation of 18 U.S.C. § 911 (Count One); use of a passport secured by false statement, in violation of 18 U.S.C. § 1542 (Count Two); and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Count Three). After a jury trial, she was convicted of all three counts and sentenced to 36 months' imprisonment and three years' supervised release. She timely appealed.

## II.     Discussion[1]

### A.     Evidentiary Objections

De Jesus-Concepcion first raises a series of evidentiary objections. "We review for abuse of discretion ... the admissibility of evidence," and, "[e]ven if we find an abuse of discretion, the Court's ruling will stand if the error was harmless." *United States v. Christie*, 624 F.3d 558, 567 (3d Cir. 2010). "We review for plain error any objections that were not specifically raised before the District Court. Under that standard, a defendant must establish that there was an error that was plain or obvious, that it affected his substantial rights, and that, if not rectified, it would seriously affect 'the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (internal citation omitted) (quoting *United States v. Lessner*, 498 F.3d 185, 192 (3d Cir. 2007)).

#### 1.     Rule 404(b) Argument

First, de Jesus-Concepcion argues that certain evidence of prior bad acts was introduced in violation of Federal Rule of Evidence 404(b). Specifically, she says that an

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

3

FBI agent's reference to a prior arrest and the admission of her fraudulent driver's license and certificate of naturalization were improper propensity evidence that require her case to be remanded for a new trial. She is mistaken.

We begin with the passing reference to a prior arrest. Before trial, the District Court had rejected a Rule 404(b) challenge to the fingerprint record taken when de Jesus-Concepcion was arrested by immigration officials and confirmed to be an illegal alien in 1997. That record was evidence that the person detained at Newark Airport in 2012 was the same person arrested in 1997, and therefore that de Jesus-Concepcion was a non-citizen entering the country under a false passport; it was therefore intrinsic to the government's case. When the fingerprint record was entered into evidence at trial, it was described – without objection from defense counsel – as having been "taken during a contact with immigration on August 16th, 1997." (App. 512.) In fact, it was defense counsel who elicited testimony from the sponsoring witness that the "fingerprints ... on file" were related to "[a]n FBI number ... assigned to someone who's [been] arrested." (App. 550-51.)

Instead of challenging that original introduction of the fingerprint evidence and associated FBI number, de Jesus-Concepcion now objects to a reference by a later witness, an FBI fingerprint expert. In describing the fingerprint record, he explained that it was catalogued by an FBI number, which is assigned "when someone ... commits a crime" (App. 732), and he later referred to the FBI number as related to an "arrest" (App. 743). Defense counsel objected and asked for a limiting instruction to address the prejudice caused by references to a prior crime and arrest. The Court gave such an

4

instruction, telling the jury to "disregard the circumstances of an arrest," as "[i]t has nothing to do with this case and is irrelevant." (App. 743.) At the time, defense counsel did not ask the Court to amplify that limiting instruction.

We agree with the District Court that the fingerprint evidence was properly introduced as intrinsic to the government's case to prove both identity and lack of citizenship. In an ideal trial, the FBI number associated with the fingerprints could have been described in a way that would have avoided mention of an "arrest" or a "crime," but the District Court took appropriate curative action with its limiting instruction. The defense did not ask for additional relief at the time, and the District Court did not abuse its discretion by foregoing additional curative action that was not requested. There was therefore no error.

De Jesus-Concepcion also raises a belated Rule 404(b) objection to the introduction of the false driver's license and certificate of naturalization with her photograph and Pichardo's identifying information. Those items were introduced at trial without objection, and the government itself asked for a limiting instruction about the proper uses for which the jury could consider them. The defense's only contemporaneous response was that such an instruction would be "redundant." (App. 489.)

We wholly reject the argument that admitting those items of evidence violated Rule 404(b), much less that the unpreserved objections to their admission establish plain error. They "directly prove" all three crimes and are therefore intrinsic evidence, not subject to Rule 404(b) analysis. *United States v. Cross*, 308 F.3d 308, 320 (3d Cir.

5

2002). They directly prove Count One because they corroborate the government's account that de Jesus-Concepcion falsely presented herself as a citizen at Newark Airport. They directly prove Count Two because they were the documentary basis for obtaining the fraudulent passport. And they directly prove Count Three because they are evidence that de Jesus-Concepcion stole Ms. Pichardo's identity. There was no error in permitting their admission in evidence.

### 2. The Immigration A-File

De Jesus-Concepcion next challenges the introduction of documents from her immigration "A-File."[2] She recapitulates her trial objection that they were improperly authenticated because there was no "Certification from the custodian of records" (Opening Br. at 32) to establish the "chain of custody" of the documents (Opening Br. at 27 (internal quotation marks omitted)).

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Along the same lines, "[t]o establish a chain of custody sufficient to make evidence admissible, the proponent need only prove a rational basis from which to conclude that the evidence is what the party claims it to be."

---

[2] "An A-file is the file maintained by various government agencies for each alien on record" and may include identifying documents such as a "passport, driver's license, other identification cards, and photographs," as well as "immigration history ... and all documents and transactions relating to the alien." *Dent v. Holder*, 627 F.3d 365, 368 (9th Cir. 2010) (internal quotation marks omitted). The documents introduced at trial from de Jesus-Concepcion's A-File were a birth certificate, Dominican passport, a fingerprint card, a biographical information sheet, and the decision denying lawful permanent resident status.

*United States v. Rawlins*, 606 F.3d 73, 82 (3d Cir. 2010) (internal quotation marks

omitted). In this case, the CBP officer introducing the A-File testified at length about

how the file was maintained and tracked, how he had acquired it, and that it had since

"been within [his] care and keep." (App. 511.) As the District Court rightly concluded,

that evidence was sufficient to authenticate the documents from the A-File. There was no

abuse of discretion in that ruling.[3]

### 3. Immigration Hearing Recording

De Jesus-Concepcion next argues that a four-minute recording of her hearing

before an immigration judge, in which she acknowledged that she was not a citizen,

should not have been admitted in its entirety because it was irrelevant, lacked proper

authentication, and violated her Confrontation Clause rights. Each of those arguments is

misguided. First, her confession that she is not a citizen is plainly relevant to the crime of

falsely representing U.S. citizenship, and de Jesus-Concepcion provides no argument for

---

[3] De Jesus-Concepcion also argues in conclusory fashion that the A-File documents were hearsay introduced in violation of her Sixth Amendment Confrontation Clause rights. Her argument, however, is merely a recapitulation of her authenticity objection. The government introduced the documents at trial under the public records exception to the hearsay rules, found in Federal Rule of Evidence 803(8). The only argument advanced by de Jesus-Concepcion on appeal for why that exception should not apply is her assertion that "[n]o certificate was ever produced and the witness ... was not competent to establish the admissibility of the records." (Opening Br. at 33.) The Confrontation Clause argument she makes is that "[i]t is critical that there be an accurate and precise account of where and how the document was obtained." (Opening Br. at 33.) Both those arguments are really authenticity objections properly raised under Federal Rule of Evidence 901. De Jesus-Concepcion has made no argument, either at trial or to us, that the public records exception does not apply to the documents in the A-File, or that the documents were testimonial for Confrontation Clause purposes. Her "casual mention" of the Confrontation Clause is "insufficient to preserve the issue on appeal." *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).

how the District Court abused its discretion or prejudiced her in admitting the entire recording for context. Second, in admitting the recording, the District Court relied on three solid foundations for authentication: the recording was certified as a true copy by the immigration court, the sponsoring witness could identify de Jesus-Concepcion's voice, and "[t]he recording [spoke] for itself" because "the defendant self-identifies at the beginning of the hearing." (App. 539.) Third, the Confrontation Clause "does not bar admission of a statement so long as the declarant is present at trial to defend or explain it," *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004), and it is nonsensical for de Jesus-Concepcion to complain about her inability to confront herself when she was sitting in the proverbial dock listening to the recording of her own statements.

### 4. False Application Testimony

The last evidentiary objection is that two witnesses, officials from the New Jersey Motor Vehicle Commission and Department of State Diplomatic Security Service, lacked the personal knowledge required to testify about de Jesus-Concepcion's fraudulent applications for a driver's license, certificate of naturalization, and passport. It is true that neither witness personally saw her fill out and submit the fraudulent forms, nor did they personally process the forms, and they conceded as much during cross-examination. But "firsthand observation ... is not the only basis for" personal knowledge, and "supervisory involvement" may "provide[] an appropriate level of personal knowledge ... to testify about the outcome of [an] investigation." *Christie*, 624 F.3d at 568. The officials were testifying not about witnessing the fraud first-hand, but about the forms themselves and the procedures for processing them. De Jesus-Concepcion gives no

8

reason to conclude that the District Court abused its discretion in deciding that the witnesses' knowledge of the records and agency procedures were sufficient to testify for that limited purpose. Admitting their testimony was not error.

## B. Sentencing Objections

De Jesus-Concepcion also appeals the District Court's sentencing guidelines calculation and the substantive reasonableness of the ultimate sentence. "We review the district court's [sentencing] decision under an abuse-of-discretion standard," analyzing "purely factual" determinations for clear error and "purely legal" determinations without deference. *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008). As to the reasonableness of the ultimate sentence, "a sentence must reflect a district court's meaningful consideration of the factors set forth at 18 U.S.C. § 3553(a)," *Lessner*, 498 F.3d at 203, and "if the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided," *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).

### 1. Reentry Enhancement

De Jesus-Concepcion objects to the District Court's two-point enhancement for "an unlawful alien who has been deported (voluntarily or involuntarily) on one or more occasions prior to the instant offense." U.S. Sentencing Guidelines Manual § 2L2.2(b)(1). She argues that she was not aware that she was subject to a deportation order, that her departure to the Dominican Republic was therefore not a voluntary deportation, and that "she lacked the intent of reentering after deportation." (Opening Br.

9

at 42.)  The District Court rejected that argument at sentencing, concluding that de Jesus-Concepcion, "by her actions, indicated that she did know about" the deportation order "because when she left this country on ... two occasions, she used passports issued to a third party."  (App. 972.)  We find no clear error in the District Court's finding, which is bolstered by the fact that, regardless of what she knew in 1997, de Jesus-Concepcion left the country after her application for lawful permanent residency was denied in 2005 and she had been unequivocally told that she must leave.

### 2.   Denial of a Departure Based on Family Circumstances

Next, de Jesus-Concepcion argues that she should have received a two-level downward departure in her offense level "for exceptional family circumstances," namely her need to care for her anemic son.  (Opening Br. at 44.)  We, however, "do not have jurisdiction to review the discretionary decision by the district court to not depart downward," and we may only review a district court's refusal to depart downward if "the ruling was based on the district court's belief that a departure on the grounds proffered by the defendant was legally impermissible." *United States v. Handerhan*, 739 F.3d 114, 122 (3d Cir. 2014) (internal quotation and editorial marks omitted).  Here, the District Court heard argument from both sides on whether to grant a downward departure based on family circumstances, and then decided, "as [its] own determination," that the circumstances did not justify a departure.  (App. 973.)  We therefore lack jurisdiction to review the Court's discretionary decision to deny the downward departure that de Jesus-Concepcion wants.

10

### 3. Substantive unreasonableness

Finally, de Jesus-Concepcion argues that the sentence she received was substantively unreasonable. She claims that she deserved further mitigation of her sentence for a variety of reasons. But mere disagreement with the District Court does not make her sentence unreasonable. During sentencing, the Court heard argument by both sides about the § 3553(a) factors, including the arguments that de Jesus-Concepcion now presses. The Court then considered the nature of the offense, the need for specific deterrence, the need for general deterrence and rehabilitation, and the circumstances of de Jesus-Concepcion's dependent son. In light of those considerations, it imposed a total sentence of 36 months' imprisonment, a six-month downward variance from the guidelines, based on the Court's conclusion that the guidelines range would be too harsh in this case. After reviewing the sentencing transcript, we conclude that the District Court did give "meaningful consideration of the factors set forth at 18 U.S.C. § 3553(a)," *Lessner*, 498 F.3d at 203, and that the ultimate sentence was one that a "reasonable sentencing court would have imposed," *Tomko*, 562 F.3d at 568. There is therefore no reason to disturb it.

## III. Conclusion

For the foregoing reasons, we will affirm the judgment and sentence of the District Court.

11